STATE *ex rel.* ATTORNEY-GENERAL *v.* COUNTY SCHOOL BOARD OF QUITMAN COUNTY.

(Division B. May 16, 1938.)

[181 So. 313. No. 33243.]

J. W. T. Falkner, of Oxford, and Eugene Thompson, of Marks, for the State.

Pat D. Holcomb, of Clarksdale, and **T. N. Gore,** of Marks, for appellee.

Argued orally by **Eugene Thompson,** and **J. W. T. Falkner,** for appellant, and by **Pat D. Holcomb,** and **T. N. Gore,** for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

Certain citizens in Quitman county filed with the county school board a petition for the creation of a special consolidated school, which petition described the territory to be embraced as follows: "Beginning at the northeast corner of Section 4, Township 8 South, Range 11 West, of Quitman county, and running west along the county boundary line to the northwest corner of Quitman county in Range 11 West; thence south and east along the Chickasaw-Choctaw line to the north boundary line of Section 3, Township 29 North, Range 2 West;

thence west along this north boundary line of Section 3 to the Northwest corner of said Section 3, Township 29 North, Range 2 West; thence south along the western boundary line of said Quitman county to the northwest corner of Section 3, Township 28 North, Range 2 West; thence east to the northeast corner of Section 1, Township 28 North, Range 2 West; thence south one and one-half miles; thence east one mile; thence south one-half mile; thence east one-half mile; thence south one mile; thence east one and one-half miles; thence north two miles; thence east from this point to the Chickasaw-Choctaw Line; thence in a southerly and easterly direction along said line to the southeast corner of Section 13, Township 9, South, Range 10, West; thence in a northerly direction along the eastern boundary line of Quitman county to the northeast corner of Section 24, Township 8 South, Range 10 West; thence west two miles; thence north one mile; thence west five miles; thence north, one mile; thence west two miles; thence north one mile to the point of beginning."

This petition was signed by a large number of persons claiming to be qualified electors, and to constitute a majority of the qualified electors of the proposed territory to be created into a special consolidated school district. The county superintendent of education gave notice of the meeting of the county school board to be held at the county courthouse at 9:30 a. m. Friday, October 22, 1937, for the purpose of considering the matter, and this notice was published in newspapers of the county on October 7th, 14th, and 21st, and due proof of publication was filed with the county school board. The county school board met, but desiring further information in reference to the matter, adjourned until 9 o'clock on the 25th of October, when it assembled and considered the said matter, and entered the following order with reference thereto: "Whereas, there was on October 6, 1937, at 4:15 o'clock P. M. filed with the county superintendent of education as president of this board a petition by B. L.

Blaine and others to create the New Darling Special Consolidated School District, including territory described therein; and whereas, the said petition having come on to be heard in open session, and the said Board having fully considered said petition, and having heard argument of counsel representing both petitioners and citizens and patrons and qualified electors of the Essex School District objecting to the prayer of said petition; and it appearing to the Board that, from time to time since June 15, 1937, various petitions have been presented to this Board affecting the Darling, Essex, McArthur, and Hinchcliff School Districts, and that this Board has, from time to time, entered various orders on said petitions; and that this Board did, at a meeting on the 20th day of August, 1937, act upon a petition praying for the creation of the New Darling Special Consolidated School District, and did, on said date, by order properly entered upon the minutes of this Board, organize and create the New Darling Special Consolidated School District. Now, therefore, be it resolved by the County School Board of Quitman county, Mississippi, that the said petition of B. L. Blaine and others praying for the creation of the New Darling Special Consolidated School District filed on the 6th day of October, 1937, be and the same is hereby dismissed and the prayer of said petition is hereby denied.''

It will be noted from the recitals of this order of the county school board that the board considered the petition, with the objections thereto, and that it had had before it at various times school matters pertaining to the territory proposed to be embraced in the district prayed for; and that the board did, on the 20th day of August, 1937, act upon a petition praying for the creation of a New Darling Special Consolidated School District, and did, on said date, by order properly entered upon the minutes of the board, organize and create the New Darling Special Consolidated School District; and they denied the petition to create the new school district,

as prayed for herein. Thereupon the state of Mississippi, on the relation of the Attorney-General, filed a petition for a mandamus in the circuit court, setting forth as exhibits to its petition the petition of the residents above mentioned, and the order of the school board denying the same; and prayed that mandamus be issued, commanding the school board to create the Special Consolidated School District. A demurrer to the petition was interposed, and sustained, in the court below, from which the state appeals.

The contention of the appellants that under the provisions of section 6584, par. (b), Code 1930, it was mandatory on the school board to create the Special Consolidated School District, and that the board had no discretion to refuse to do so: Paragraph (b) reads as follows: "Whenever a majority of the qualified electors of a proposed consolidated school district, special consolidated school district, or rural separate school district shall file a petition with the president of the county school board describing the territory to be embraced in such school district and requesting that it be created into one district, then it shall be the duty of the school board to create such district and to determine and describe the boundaries thereof and to name the sections and parts of sections composing such district and to designate the location for a school building. When a school district is created under this provision, then it shall not be necessary for the board to publish its order creating same, and the order shall become final from and after its passage."

The appellants relied upon the language of the statute; "then it shall be the duty of the school board to create such district and to determine and describe the boundaries thereof and to name the sections and parts of sections composing such district and to designate the location for a school building," as a mandatory provision, removing any discretion from the school board to do otherwise than decide whether the petitioners constitute a majority of the qualified electors of the proposed district.

In construing a statute, all statutes in pari materia are to be considered together, and the legislative intention must be ascertained from a consideration thereof. In section 6586, Code 1930, it is made the duty of the county school board to divide the whole territory of the county outside of separate school districts into school districts for the white race, and also for the colored race, prescribing limits and provisions for the government of the school in so doing. It is therein provided that, "The district shall be so arranged as to place all children within reasonable distance of the school house; and one public school shall be maintained in each district," etc. In other words, the scheme of the statute is to embrace every part of the county in a school district, so that all children may have the opportunity to attend a school; and to require schoolhouses to be so located as to effectuate this purpose. A consolidated school district must be laid out and established in accordance with this legislative purpose; and no territory can be denied educational opportunities for the children living therein.

We therefore find from a consideration of the petition for mandamus, and its exhibits, that there are no recitals showing that all the territory of the county has been so laid out that establishing the school district prayed for would leave educational opportunities to children in other parts of the territory adjacent to the consolidated school district.

In construing statutes the word "may" may be construed as mandatory in application, while "shall" may be construed as permissive rather than mandatory; although in ordinary usage "may" is used in a permissive sense, and "shall" is mandatory and excludes discretion —though not always. In Black on Interpretation of Laws (2 Ed.), at page 529, under the heading "Permissive and Mandatory Terms," it is said: "Such terms and phrases are as susceptible of being read in either a mandatory or a directory sense are presumed to have been used in their natural and primary signification, and

should not be interpreted otherwise, unless it is necessary to carry out the purpose of the legislature, effect justice, secure public or private rights, or avoid absurdity. But words in a statute importing permission or authorization may be read as mandatory, and words importing a command may be read as permissive or enabling, whenever, in either case, such a construction is rendered necessary by the evident intention of the legislature or the rights of the public or of private persons under the statute.'' See comments on following pages.

It is more than doubtful, under the case of Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330, whether a school district can be created on a mere petition of qualified electors or other persons in such district.

When one construction of a statute would endanger its constitutionality, it will be construed in harmony with the Constitution if, under the language of the statute, this may reasonably be done. The legislative power of this state is vested in the Legislature; and while the Legislature may confer authority for legislative action, or discretion, or local boards or governmental subdivisions, stating the conditions under which such laws may become effective as a part of the legislative will, it has not been given the power, under the Constitution, to surrender its own discretion to the qualified electors of the state or any part of the state. It may determine the conditions under which laws shall operate, and leave to local authorities the determination of facts under these conditions in a particular locality, as to the particular subject matter of the statute.

It certainly seems to us that it is not contemplated that all discretion should be removed from the county school board, so that districts would have to be changed whenever a majority of the qualified electors should determine, and as often as they might desire, to have such changes. The rights conferred by the statute, above mentioned, are conditional and discretionary, to the extent that the creation of such district would not operate to impair or de-

stroy the rights of other citizens and children to have reasonable and adequate school facilities, and that without undue hardship and inconvenience. The order of the county school board shows that they had, a short time previous to the filing of the petition, established a special consolidated school district, and reveals that the board was acting with judgment and reason, and not capriciously. As a writ of mandamus does not lie to control discretion, where conferred by law, it follows that it is not an appropriate remedy in the present case; and the judgment of the court below in sustaining the demurrer to the petition and the exhibits thereto was proper.

The judgment is therefore affirmed.

Affirmed.