Leslie C. COHEN, Individually and on Behalf of all others similarly situated, Plaintiff,

v.

MISSISSIPPI STATE UNIVERSITY OF AGRICULTURE AND APPLIED SCIENCE et al., Defendants.

Civ. A. No. EC–6645.

United States District Court
N. D. Mississippi, E. D.

July 15, 1966.

Alvin J. Bronstein, Bruce S. Rogow, Donald A. Jelinek, Lawyers Constitutional Defense Committee, Jackson, Miss., for plaintiff.

Joe T. Patterson, Atty. Gen., State of Miss., and Will S. Wells, Asst. Atty. Gen., State of Miss., Jackson, Miss., for defendants.

Before BROWN, Circuit Judge, and CLAYTON and RUSSELL, District Judges.

JOHN R. BROWN, Circuit Judge:

This suit, heard by a three-judge court, brought under 28 U.S.C.A. §§ 1332, 1343 (3) and (4) and 2201 and 42 U.S.C.A. §§ 1983, 1985 and 1988, challenges the constitutionality of § 6726.7 of the Mississippi Code of 1942, both under the Federal and State Constitutions. This statute authorizes the Board of Trustees of State Institutions of Higher Learning to enact traffic rules and regulations for the control and direction of parking and traffic on the campuses of State Institutions of Higher Learning.[1] The viola-

---

1. § 6726.7. Traffic regulations for campus and streets—enforcement—penalty for violation.—1. The Board of Trustees of State Institutions of Higher Learning is hereby authorized and empowered to enact traffic rules and regulations for the control, direction, parking and general regulation of traffic and automobiles on the campus, and streets of any state institution of higher learning under the supervision of such board.

2. The traffic officers duly appointed by the president of any state institution of higher learning, or any peace officer or highway patrolman of this state, are vested with the powers and authority to perform all duties incident to enforcing such rules and regulations, including the arrest of violators.

3. Violation of any rules or regulations promulgated hereunder shall constitute a misdemeanor, and any person charged with a violation of such rules or regulations may be charged with such violation in the Justice of the Peace Court of the district in which violation occurred, and

tions of rules or regulations promulgated thereunder are to constitute a misdemeanor for prosecution in the Justice of the Peace Court. The principal attack is that this is an unconstitutional delegation of legislative powers and, as a corollary, if delegation were permissible generally, the enabling statute is too vague and does not prescribe adequate legislative standards. We uphold the validity of the statute and deny the relief sought.[2]

As the case comes to us, it is virtually without any factual controversy. By commendable close collaboration of counsel under the pretrial supervision of the Court, the parties, by pleading and stipulation, have eliminated all significant factual issues and have narrowed the legal issue to the single one of the constitutionality of § 6726.7 (and to a limited extent the 1954 regulations promulgated

thereunder). The facts, therefore, are not complex or conflicting.

Plaintiff is a white, male, full-time student at Mississippi State University of Agriculture and Applied Science (MSU) at State College, Mississippi. Claiming that there are common questions of law and fact, he brings this action on his own behalf and on behalf of all other students and personnel at MSU. The institution, MSU, was created by the Act of February 28, 1878. Besides MSU, other officers and officials of the institution, the Board of Trustees, and certain representatives of student organizations are made parties defendant.[3]

The Plaintiff, at least in the eyes of the traffic security authorities, is a persistent violator of parking regulations on the campus. Directly at the heart of this controversy is the action taken by MSU

---

any person convicted of a violation of any such rule or regulation may be punished by a fine of not more than one hundred dollars ($100.00), or by imprisonment not exceeding thirty days, or by both such fine and imprisonment.

4. Any rules and regulations promulgated hereunder shall become effective only after notice of the enactment of same has been published in three consecutive weekly issues of the college newspaper and in a newspaper published and having general circulation in the County or municipality where the institution to which same pertain is located, and such notice shall state where the full text of such

rules and regulations may be found on file. And in addition, such rules and regulations shall be posted on five bulletin boards at each such institution for a period of four weeks after their promulgation.

SOURCES: Laws, 1954, ch. 281, §§ 1–4.

2. To preserve the status quo, the Court granted a temporary restraining order pending final decision of the Court. This restraining order is vacated by our order, but, as later pointed out, the Plaintiff as a practical matter obtains substantially all of the relief sought as to the pending traffic violations which makes further orders unnecessary.

3. The Defendants are:

| | |
|---|---|
| William L. Giles | President, MSU |
| Board of Trustees of the Institutions of Higher Learning of the State of Miss. | |
| Verner S. Holmes | President, Board of Trustees |
| S. R. Evans | Vice President, Board of Trustees |
| Harold B. Hall | Dean of Men at MSU |
| Durward W. Aiken | Dean of Students' Affairs, MSU; Chairman, Faculty Discipline Committee; Chairman, Traffic Committee |
| Tommy M. McWilliams | Chairman, Judicial Council of the Student Association, MSU |
| Troy Majure | President, Student Association, MSU |

with respect to the ten violations occurring between March 21, 1966 and May 13, 1966.[4] These traffic tickets were issued by authorized campus traffic officers purportedly under § 6726.7 (note 1, supra), and the regulations enacted by the Board of Trustees September 16, 1954,[5] plus certain revisions of 1958 and supplements thereto which MSU undertook to put into effect. The 1954 regulations prescribed a number of standards for the use and operation of automobiles on the campus including registration of vehicles, speed limits, prohibition of reckless driving, driving under influence of alcohol or drugs, parking, driving with cutouts, excessive use of horns, compliance with stop signs, traffic routing signs, lights, and the like. Of importance here, these regulations did not prescribe any form of University administrative sanctions or University administrative procedure for the enforcement of fines or other penalties. Rather, the sole sanction was to be a charge brought in the Justice of the Peace Court for prosecution as a misdemeanor with a prescribed maximum fine, imprisonment, or both.[6]

In 1958 MSU, without any prior or subsequent ratification by the Board of Trustees, undertook to modify the 1954 regulations extensively. These were published in the student paper, the Reflector, but not otherwise. The marked difference between the 1954 and 1958 regulations was the introduction of a series of institutional administrative sanctions and enforcement procedures which, the Plaintiffs claimed, had the effect of putting a premium on a quick administrative "plea of guilty" and, conversely, a deterrent on the exercise of the fundamental right to deny guilt and defend.[7] By subsequent purported revisions by MSU (not the Board of Trustees) the triple route was set up under which parking violators may be processed either (1) by the uncontested payment of a fine or (2) by a hearing within MSU by either the Judicial Council or Faculty Discipline Com-

4. These are shown by Exhibit A annexed to the Complaint:

TRAFFIC TICKETS

| Ticket No. | Date | Time | Charge | Location |
|---|---|---|---|---|
| 009197 | March 21, 1966 | 1:30 P.M. | Restricted Parking | Magruder |
| 009512 | March 28, 1966 | 9:20 A.M. | Restricted Parking | Magruder |
| 009650 | March 28, 1966 | 9:10 A.M. | Restricted Parking | Magruder |
| 009762 | March 30, 1966 | 9:40 A.M. | Restricted Parking | Lee Blvd. North |
| 009853 | March 31, 1966 | 2:05 P.M. | Restricted Parking | Lee North |
| 010734 | May 3, 1966 | 9:45 A.M. | Parking Overtime | Lee Blvd. C. |
| 010843 | May(?) 1966 | 12:30 P.M. | Parking Overtime | Lee Blvd. C. |
| 010845 | May 5, 1966 | 1:35 P.M. | Parking Overtime | Lee Blvd. C. |
| 010852 | May 6, 1966 | 9:40 A.M. | Parking Overtime | Lee Blvd. C. |
| 011017 | May 13, 1966 | 3:00 P.M. | Parking Overtime | Lee Blvd. C. |

5. See paragraph 6 of the stipulation, (see note 12, infra). The documentary evidence offered by the defendants establishes without contradiction that the 1954 regulations were properly published as required by § 6726.7(4) in both the Reflector, the student publication, and the Starkville Daily News.

6. "Violation of any rule or regulation as set forth in the full text of the regulations * * * shall constitute a misdemeanor, and any person charged with a violation of such rules or regulations may be charged with such violation in the justice of the peace court of the district in which violation occurred, and any person convicted * * * may be punished by a fine of not more than one hundred dollars ($100.00), or by imprisonment not exceeding thirty days, or by both such fine and imprisonment."

7. The 1958 regulations prescribed essentially that only habitual violators of the parking rules and those who contest their parking tickets would be referred to the Justice of the Peace for criminal trial. All others were required to pay a fine within 48 hours or suffer an automatic increase in the penalty.

mittee or (3) by referral to the local Justice of the Peace for criminal trial.[8]

It was also admitted that the "changes since 1958" in the penalties for parking violators" are so bewildering and numerous that it is impossible to determine with certainty what those penalties are. (See also paragraph 11, Stipulation, Note 12 Infra.)

Beginning on April 1, 1966, the Plaintiff commenced his vigorous contest of the validity of the parking regulations of MSU and the tickets issued to him (and presumably those to follow in April and May), (see note 4, supra). Thus began the contentious dispute resulting in the filing of this case. His position, so well known to the MSU authorities, triggered administrative action. On May 3, 1966, Dean Hall by letter advised Plaintiff that there were five parking tickets issued during March 1966 which were unpaid. The letter plainly stated that a failure to pay the fines by 11:30 a. m. May 7, 1966, would require that his "withdrawal from the University be processed in the office of student affairs on Monday, May 9, 1966." On May 7, 1966, Dean Aiken advised Plaintiff that a hearing before the Faculty Discipline Committee with respect to the five unpaid tickets for March 1966 was scheduled for May 11. In response to this by letter of May 9, Plaintiff through his present counsel in specific terms which paraphrased the present legal complaint, objected to the holding of the disciplinary proceedings, referral to the Justice of the Peace or other action to enforce the traffic tickets. The hearing scheduled for May 11 was postponed and so far as the record discloses no hearing was held. In the meantime, on May 14, 1966, Dean Aiken advised Plaintiff that the five unpaid tickets had been referred to the local Justice of the Peace for handling "by the state law enforcement agencies in the State courts." This resulted in his arrest on May 16, 1966. Before the trial, scheduled for May 21, 1966, Plaintiff filed a removal petition to this Court where it pends as Criminal Action No. ECR–6660.[9]

Against this background, the plaintiff made the broad charge that he was being prosecuted and threatened with prosecutions or disciplinary proceedings for violations of parking regulations, which are unconstitutional for a number of reasons.[10] The relief requested was both specific and general.[11]

---

8. The answer formally admits that "the procedures for referring inviduals charged as traffic parking violators to the local JP are so ill-defined as to permit the arbitrary, unequal and discriminatory selection of persons who are to be referred. (see also paragraph 10, Stipulation, Note 12 Infra.)

9. Subsequently, of course, the Supreme Court announced its decision in The City of Greenwood v. Peacock, 1966, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944. [June 20, 1966].

10. The grounds asserted are:
    (1) Denial of due process under the Fourteenth Amendment and rights in Art. III, §§ 5–32, Constitution of Mississippi, because rights to a fair trial, counsel, jury, confrontation, public trial, etc., are obtainable under the regulations only on condition that he subject himself to different and more severe penalties before a Justice of the Peace than would be imposed if he submits to administrative procedures;
    (2) Denial of due process because of absence of any fixed, definite or ascertainable standards to guide the Board of Trustees in promulgating regulations;
    (3) Lack or denial of due process for absence of definite and fixed standards as to referral to trial before a Justice of the Peace rather than administrative processing;
    (4) Denial of due process because of the prospect of summary punishment and trial of a crime before the Judicial Council, or Faculty Discipline Committee, which are non-judicial bodies;
    (5) Denial of equal protection, Fourteenth Amendment, because MSU made a referral of the case to the Justice of the Peace rather than administrative disciplinary proceedings afforded to other students;
    (6) The separation of powers guaranteed by Art. IV, Section IV, of the U. S. Constitution, and Art. III, Section I,

But by virtue of the stipulations of counsel which the Court receives as evidence, most of this has washed out and the case now is narrowed to the single question of the constitutionality of § 6726.7 and, to an extent, the validity of the 1954 regulations. The stipulation [12] eliminates all question concerning the

and Art. IV, Section III, of the Constitution of the State of Mississippi, are violated because no standards are defined governing action of the Board of Trustees in creating crimes as set forth, and because MSU, not the Board of Trustees, has attempted to promulgate the amended regulations.

Plaintiffs also asserted the Mississippi statutory grounds that the regulations were not published in accordance with the requirements of § 6726.7(4) and that MSU exceeded its authority in undertaking to amend regulations which are to be promulgated by the Board of Trustees.

11. Paragraph 1 sought, as was granted, the convening of a three-judge court. For ease of reference we retain the paragraph numbers of the prayer as to the balance in which plaintiffs sought: (2) a declaration that § 6726.7 is unconstitutional under the Mississippi or Federal Constitution or both; (3) a declaration that traffic parking regulations, penalties and procedures on which plaintiff has been charged are unconstitutional and illegal; (4) an injunction restraining defendants from (a) continuing to enforce the MSU traffic parking rules (b) proceeding further, either by criminal or administrative procedures, against plaintiff or others in his class (c) harassing, intimidating or threatening plaintiff for his exercise of his constitutional rights; (5) an order directing defendants to expunge any notation from MSU records because of his assertion of his constitutional rights or violation of MSU parking regulations; (6) an order directing defendants to permit plaintiff to enroll for the 1966 summer session and other sessions without penalty for his violation of MSU parking regulations or because of any pending criminal or administrative procedures related thereto; (7) other and further general relief.

12. All parties agreed that the case would be submitted on the pleadings and stipulation without further evidence. Since the Defendants did not object as required by this Court's letter direction of July 1, 1966, the facts set forth in Plaintiff's counsel's letter of June 25 addressed to the Court are accepted as a stipulation of the parties. It reads:

1. That this is a civil action brought by the plaintiff on his own behalf and on behalf of others similarly situated to declare section 6726.7 of the Mississippi Code Annotated unconstitutional on its face and as applied to the plaintiff.

2. That plaintiff is a white male full time student of M.S.U., a resident of Starkville, Mississippi, a citizen of Canada and former managing editor during 1966 of the campus newspaper in which capacity he has edited and written articles on controversial subjects in the exercise of his First and Fourteenth Amendment rights.

3. That the identification and standing of all of the defendants including responsibilities and duties as alleged in paragraphs 4 through 11 inclusive of the complaint are correct except that they deny that defendant Aiken is charged with the general supervision over student activities and deny that the defendant Traffic Committee has the responsibility of the enactment of traffic regulations at M.S.U.

4. That the plaintiff since March 20, 1966 has received at least 10 different traffic tickets for various alleged parking violations and that these tickets were issued by campus police under an authority which purports to exist by virtue of various campus traffic rules and regulations at M.S.U.

5. That section 6726.7 of the Mississippi Code Annotated speaks for itself.

6. That certain traffic regulations became effective at M.S.U. on November 1, 1954 and that notice thereof was published in the student newspaper during September and October, 1954, but deny that no other notice of said regulations of 1954 were given in any other place as required by the statute. With respect to this denial, defendants' counsel has stated that he has obtained and will furnish proof to the court supporting the denial of this allegation and if this proof is presented the plaintiffs will concede this fact.

7. That Exhibit C attached to the complaint is a true copy of said traffic rules as condensed and published in the campus newspaper.

8. The defendants deny that the traffic regulations enacted in 1954 were amended by M.S.U. in 1958, but admit that an attempt was made by M.S.U. to adopt supplementary rules and traffic regulations as an alternative method of assessment of penalties. They admit that the supplementary rules purported to go into effect on November 17, 1958 and admit that there was no publica-

1958 and post 1958 attempted amendments of the 1954 regulations. But the stipulation goes much further. The defendants admit that the purported 1958

tion of such rules as is required by statute.

9. They admit that the revisions of 1958 provide that only habitual violators of the parking rules and those who contest their parking tickets are referred to the Justice of the Peace for trial, and that all others are required to pay a fine within 48 hours or suffer an automatic increase in the penalty, and they further admit that from time to time the revisions of 1958 have been further amended so that parking violators at M.S.U. may now be processed either by the uncontested payment of a fine, by a hearing within M.S.U. by the defendant Judicial Council or defendant Faculty Discipline Committee or by referral to the local Justice of the Peace for trial. They further admit that the revisions in the parking regulations since 1958 have not been published or approved prior to becoming effective, by the defendant Board of Trustees as required by the statute.

10. They admit that the procedure for referring individuals charged as traffic parking violators to the local J.P., are so ill-defined as to permit the arbitrary, unequal and discriminatory selection of persons who are to be referred.

11. They admit that the changes in the regulations referred to above, which were not published since 1958 in respect to the penalties for parking violators, are so bewildering and numerous that it is impossible to determine with certainty what those penalties are, and they admit that there are conflicts between the face of the tickets and the regulations of campus traffic brochures published by the defendant M.S.U.

12. With respect to the plaintiff Leslie C. Cohen they admit that on or about April 1, 1966 he contested the validity of the parking regulations at M.S.U. and the tickets issued to him under those regulations and that the substance of his claim was published in the campus newspaper on April 1, 1966. They further admit that on or about May 5, 1966 this plaintiff received a letter from defendant Harold B. Hall dated May 3, 1966 advising him that 5 parking tickets issued to him during the month of March, 1966 were then unpaid, and that a failure to pay the fines for these tickets by May 7, 1966 would require his withdrawal from the University, but deny that any threat was made in said letter.

13. They admit that on or about May 9, 1966 the plaintiff received a letter dated May 7, 1966 from the defendant Aiken advising him that a hearing before the defendant Faculty Discipline Committee with reference to the plaintiff's unpaid traffic tickets had been scheduled for May 11. They further admit that the plaintiff's attorneys sent a letter dated May 9, 1966 detailing the plaintiff's objections to the holding of disciplinary proceedings against him or to any trial before the local J.P. which was based on his parking violations, and they admit that the plaintiff appeared at said hearing on May 11, 1966 accompanied by one of his attorneys who objected to the holding of said hearing on the grounds set forth in the letter of May 9, 1966. They further admit that the hearing referred to above was postponed until May 27, 1966.

14. They admit that on May 14, 1966 the plaintiff received a letter from the defendant Aiken which advised him that the 5 unpaid tickets have been referred to the local Justice of the Peace for trial and that on May 16, 1966 the plaintiff was arrested on the basis of said alleged parking violations and was released only after posting a cash bond; that his trial was scheduled for May 21, 1966 and they further admit that on May 20, 1966 the plaintiff filed a removal petition on said charges in the Federal District Court.

15. The defendants further admit that the *supplementary* rules to the traffic rules and regulations at M.S.U. which were attempted to be put in effect by the M.S.U. administration in 1958 and again in 1965 were without legal authority and amounting in law to a nullity, and further that these so-called supplementary rules do not supersede, amend or affect the traffic rules and regulations adopted in 1954 under the authority of the statute and that the latter are now in full force and effect.

16. It is agreed that no parking rules or regulations or traffic rules or regulations at the M.S.U. campus can be enforced against the plaintiff except the original rules and regulations promulgated in 1954 by the defendant Board of Trustees of the Institutions of Higher Learning. They admit that the defendants cannot proceed further either by criminal or administrative procedures

amendments and subsequent supplements were not published as required by statute (par. 8) and that those of 1958 and of 1965 were "without legal authority * * * amounting in law to a nullity" and that they "do not supersede, amend or affect the * * * 1954" regulations which "are now in full force and effect" (par. 15) and are the sole parking rules or regulations which "can be enforced against the plaintiff" (par. 16). More decisive, this leads defendants to make the legal concession that "the defendants cannot proceed further either by criminal or administrative procedures against the named plaintiff on the parking violations now charged against him" (par. 16) and to agree that "no further proceedings can be taken against the plaintiff either administratively or in the state courts on the parking violations now charged against him and that all of the charges will be dismissed * * *" (par. 17).

The upshot of this is that we agree with the Plaintiff's trial memorandum brief that Paragraphs (3), (4) (a) (b) (c), (5) and (6) of the prayer, see note 11, supra, are no longer in issue.[13]

As thus simplified Plaintiff's request (Par. 2, prayer, note 11, supra) that we declare § 6726.7 unconstitutional becomes a greatly simplified problem. Despite the efforts of the Plaintiff to make Baker v. Carr, 1961, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, into a declaration that under the Guaranty Clause, Luther v. Borden, 1849, 7 How. (U.S.) 42, 12 L.Ed. 581, a republican form of government prohibits long accepted traditional concepts of delegation of some power by the Legislative branch, our case now presents merely the application of long accepted principles.

■ At least since United States v. Grimaud, 1911, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563, the power of Congress to delegate to an Executive department or an administrative agency the power to promulgate rules and regulations, the violation of which is subject to criminal sanctions, is entirely consistent with our constitutional structure. The Court spoke broadly:

"From the beginning of the government, various acts have been passed conferring upon executive officers power to make rules and regulations,— not for the government of their departments, but for administering the laws which did govern. None of these statutes could confer legislative power. But when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, the violation of which could be punished by fine or imprisonment fixed by Congress, or by penalties fixed by Congress, or measured by the injury done."

■ In American Power & Light Company v. Securities & Exchange Commission, 1946, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103, the Court upheld congressional delegation providing, of course,

against the named plaintiff on the parking violations now charged against him.

17. The attorney for the defendants agrees that no further proceedings can be taken against the plaintiff either administratively or in the state courts on the parking violations now charged against him and that all of the charges will be dismissed or nol prossed as the case may be and the removal petition filed by the plaintiff in the United States District Court will be withdrawn.

13. There is no evidence that others, named or unnamed, are involved, so no class relief is warranted or granted. Likewise, there is no proof of the Plaintiff's charge

(e. g., Par. 32 of the Complaint, etc.) that these "disciplinary proceedings * * * and the criminal proceedings * * * were instituted for the purpose of inhibiting and punishing Plaintiff's exercise of rights of free expression under the First and Fourteenth Amendments" of the Constitution, because of his "editing and writing for the Reflector." Consequently, no relief is warranted or granted as to Par. (4) (c) or those portions of Pars. (5) and (6) referring to any matter "which arises out of his assertion of his constitutional rights" (Par. 5) "or his exercise of his constitutional rights under the Mississippi and U. S. Constitutions" (Par. 6).

that Congress delineates the general policy, the agency which is to execute, and the boundaries of such delegated authority. This power has been upheld in numerous cases. See Hotch v. United States, 9 Cir., 1954, 212 F.2d 280, 14 Alaska 594; Charles Hughes & Co. v. Securities & Exchange Commission, 2 Cir., 1943, 139 F.2d 434, cert. denied, 321 U.S. 786, 64 S.Ct. 781, 88 L.Ed. 1077; United States v. Grunenwald, W.D.Pa., 1946, 66 F.Supp. 223; Schueller v. Drum, E.D.Pa., 1946, 51 F.Supp. 383; American Trucking Assns., Inc. v. United States, N.D.Ala., 1951, 101 F.Supp. 710; cf. Hirabayashi v. United States, 1943, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774.

The legislative standard to serve as guidelines to the administrative agency —here being the Board of Trustees— presents no real problem under § 6726.7. When it is borne in mind that in any prosecution commenced in the Justice of the Peace Court the defendant has the full right to challenge the validity of the regulation charged to have been violated either as to vagueness, indefiniteness or otherwise, we think it was quite adequate for the Mississippi Legislature to broadly define the scope and area of the administrative regulations to be promulgated by it. Unless the Legislature were to spell out the very same details, we are at a loss to understand how the statutory charge to the Board of Trustees "to enact traffic rules and regulations for the

control, direction, parking and general regulation of traffic and automobiles on the campus and streets" of State institutions could have been made any more plain. Nor do the cases described by the Plaintiffs "as economic due process decisions" [14] require any different result.

Of course, our upholding the constitutionality of § 6726.7 also to a limited extent upholds the validity of the 1954 regulations. The statute, absent the regulations, has no operative effect upon any person. It affects no one's conduct either in enforcement, compliance, prosecutions or penalties. But apart from the claim of unconstitutional delegation of legislative power, no attack has been made on the 1954 regulations or any provision thereof. We hold that Mississippi had the right to delegate this much authority to the Board of Trustees, and that the Board of Trustees had authority to promulgate valid regulations. The regulations do not suffer, therefore, from the fact that they are the creature of a subordinate administrative agency acting pursuant to delegated authority. We also hold that the legislative standards as guidelines to the Board of Trustees were reasonably adequate considering the field to be occupied and the nature of the activities to be regulated. Whether a particular regulation which is charged to be violated suffers from vagueness or indefiniteness is, of course, quite a different question and one not before us.[15] Hence

14. Washington ex rel. Seattle Title Trust Co. v. Roberge, 1928, 278 U.S. 116, 121, 122, 49 S.Ct. 50, 73 L.Ed. 210; Eubank v. Richmond, 1912, 226 U.S. 137, 143, 33 S.Ct. 76, 57 L.Ed. 156; Panama Refining Co. v. Ryan, 1935, 293 U.S. 388, 446, 55 S.Ct. 241, 79 L.Ed. 446; A.L.A. Schechter Poultry Corp. v. United States, 1935, 295 U.S. 495, 537, 55 S.Ct. 837, 79 L.Ed. 1570; Carter v. Carter Coal Co., 1936, 298 U.S. 238, 56 S.Ct. 855, 80 L. Ed. 1160.

15. Here all of the charge of traffic tickets are for parking violations (see note 4, supra).

Although we expressly disclaim any purpose to decide the matter we would have difficulty as Judges, as lawyers, or legal scriveners in prescribing more definite

standards as to parking than found in the 1954 regulations:

"Automobiles or motor vehicles are to be parked on the campus and streets of Mississippi State College only in those areas designated as parking areas, in such manner, at such places, and for such time as may be indicated on appropriate signs or markers. Mississippi State College may, if necessary, restrict parking in certain areas to certain categories or classes such as visitors, dormitory students, day or commuting students, faculty, staff or other employees.
" * * * * *

"Persons operating or driving automobiles or motor vehicles on the campus and streets of Mississippi State College are to comply with all stop signs, yellow lines for routing traffic, speed limit signs, parking signs, traffic lights

we do not run into the problem, urged so vigorously by the Plaintiff which is discussed in Lanzetta v. State of New Jersey, 1939, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 and Giaccio v. State of Pennsylvania, 1966, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447; Cox v. State of Louisiana, 1955, 379 U.S. 536, 557, 85 S.Ct. 453, 13 L.Ed.2d 471; Niemotko v. Maryland, 1951, 340 U.S. 268, 272, 71 S.Ct. 325, 95 L.Ed. 267; Yick Wo v. Hopkins, 1885, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

And the Plaintiff's case fares no better on the charge of unconstitutionality under the Mississippi Constitution. The Supreme Court of Mississippi applies essentially the approach of the Supreme Court in relation to congressional delegation of power to executive agencies. In State ex rel. Attorney General v. County School Board of Quitman County, 181 Miss. 818, 181 So. 313, the Supreme Court of Mississippi, in discussing the question of delegation of authority by the legislature used this language:

"The legislative power of this state is vested in the Legislature; and while the Legislature may confer authority for legislative action, or discretion, on local boards or governmental subdivisions, stating the conditions under which such laws may become effective as a part of the legislative will, it has not been given the power, under the Constitution, to surrender its own discretion to the qualified electors of the state or any part of the state. *It may determine the conditions under which laws shall operate, and leave to local authorities the determination of facts under these conditions in a particular locality, as to the particular subject matter of* the statute." (Emphasis added.)

Since we hold the statute valid and all relief to which Plaintiff would otherwise be entitled has been accorded by judicial concessions of the defendants, the injunc-

or signals, and other usual and accepted signs, indicators, markers or signals

tion and declaration sought are denied and the complaint is dismissed with costs taxed equally.

Decree in accordance with opinion.

for the control of traffic and parking."