**SOUTHERN ALAMEDA SPANISH SPEAKING ORGANIZATION (also known as SASSO) et al., Plaintiffs,**

**v.**

**CITY OF UNION CITY et al.,**
**Defendants,**

**James E. Hobbs, Mary C. Hobbs, et al.,**
**Intervenors.**

**No. 51590.**

United States District Court,
N. D. California.

Jan. 15, 1970.

Cruz Reynoso, San Francisco, Cal., Richard F. Bellman, c/o NCDH, New York City, D'Army Bailey, San Francisco, Cal., for plaintiffs.

John Trump, of Bell, Trump, Sheppard & Raymond, Fremont, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This action is brought by the Southern Alameda Spanish Speaking Organization (SASSO) against the City of Union City, Alameda County, and its officials, to compel the defendants to take all steps necessary, including multi-family dwelling zoning, to enable plaintiff to build and occupy a housing project in the Baker Road section of the city.

The case is now before the court on plaintiffs' application for the convening of a three-judge court and issuance of a preliminary injunction.

In January, 1969, SASSO obtained an option to purchase the Baker Road property and proposes to construct thereon a 280 unit, federally funded, low and moderate income housing project.

Since 1962 the area had been zoned as agricultural-single family residential but, at the request of SASSO, the City Council on April 7, 1969, adopted a zoning ordinance, No. 55.49–69, providing for a variance permitting multi-family residential use.

This ordinance, however, never went into effect because community opponents of the proposed housing project, invoking California Election Code Sections 4051, 4052, commenced and perfected referendum proceedings.

After an unsuccessful attempt by plaintiff to have this court enjoin the holding of the referendum election, the city-wide referendum election was held on July 29, 1969 and resulted in rejection by the voters of Ordinance 55.49–69 by a vote of 1149 to 845.

Since Ordinance 55.49–69 never became effective, the proposed building site remains as previously zoned, i. e., for agricultural-single family residential[1] and plaintiff finds itself unable to proceed with its housing project unless this court declares and orders the defendants to take all steps necessary to enable plaintiffs to proceed with their housing project notwithstanding the referendum rejection by the electorate of Ordinance 55.49–69.

As ground for such relief plaintiff argues that the California referendum law, Election Code §§ 4051, 4052, is unconstitutional as applied to the referendum of a zoning ordinance, citing and relying upon cases holding that a zoning ordinance, which purports to give to a stated percentage of property ownership the right to zone for a whole area without any specified standards, is invalid as a violation of the due process requirements of the 14th Amendment. Washington ex rel. Seattle Title Trust Company, Trustee, etc. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928); Eubank v. City of Richmond, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912); Nectow v. City of Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928); Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

The rationale of these cases is that zoning ordinances have their justification under the police power of government and must bear some substantial relationship to the public health, safety, morals or general welfare and that any zone ordinance which broadly vests in some landowners the power to arbitrarily, capriciously or selfishly control the land use of other landowners, is invalid.

For this reason most zoning ordinances are carefully drawn with requirements for notice to property owners and public hearing, e. g., Cal.Govt.Code § 65800 et seq., under which the City of Union City derives its power to adopt zoning ordinances.

All the above cited cases involved the constitutionality of zoning ordinances, as such, and, of course, the constitutionality of zoning ordinances may be chal-

---

1. It should be noted that the property in question is currently zoned agricultural, but this agricultural category is merely a holding classification until such time as this area is rezoned single-family residential pursuant to the Union City 1980 Master Plan (which was approved by the City Council of Union City after public hearings in 1962).

lenged for failure to meet the standards laid down by the Supreme Court.

The pending case, however, does not involve the constitutionality of a zoning ordinance. Plaintiffs here do not challenge zoning Ordinance No. 55.49–69; on the contrary, they invoke this ordinance and claim benefits under it.

Plaintiffs here are challenging, not the zoning ordinance, but the California referendum statute (Election Code §§ 4051, 4052), contending that the referendum statute cannot be constitutionally applied to refer a zoning ordinance to the electorate for approval or rejection because such a referendum would permit the electorate to regulate land use without any binding standard or guide and thus arbitrarily and capriciously within the meaning of the cases above mentioned.

We are of the opinion that plaintiff's reliance on the above cases as an analogy for holding that a referendum may not be constitutionally applied to zoning ordinances, is misplaced.

Unlike initiative legislation [2] the referendum statute does not, itself, purport to zone property or regulate its use. Such a statute is neutral, so far as the subject matter of the referendum is concerned, and merely provides a method for staying the effect of legislation, in this case zoning Ordinance No. 55.49–69, until the electorate has had an opportunity to either approve or reject it.

When, as in this case, the electorate rejects the legislation the effect is, not to zone property or even to change the zoning of property, but merely to prevent the zoning ordinance as adopted by the City Council, from ever becoming effective. The property in question, being unaffected by the ordinance, remains, so far as zoning is concerned, either unzoned or, if previously zoned, as in this case, then in the classification of the previous zoning, i. e., agricultural-single family residential.

Plaintiffs do not challenge the validity of the previous zoning classification of the property in question; they have merely sought to have that classification changed through Ordinance No. 55.49–69 but without success because of the electorate's rejection of that ordinance at the referendum election.

For these reasons the above cited cases, relied on by plaintiff, are wholly inapplicable and do not require, as argued by plaintiff, a holding that an otherwise valid referendum statute may not be constitutionally used to submit a zoning ordinance to the electorate for approval or rejection.

In Johnston v. City of Claremont, 49 Cal.2d 826, 836–838, 323 P.2d 71, Cal.Supreme Court, 1958, the California Supreme Court specifically held that zoning ordinances or amendments of zoning ordinances, are legislative acts and, as such, are subject to the state's referendum procedures.[3]

In Ranjal v. City of Lansing, 417 F.2d 321 (6th Cir. 10/28/69), the Court of Appeals reversed a District Court order enjoining the holding of a referendum election on a spot zoning ordinance passed by a city council, pointing out that the referendum is an important part of

---

2. It has been held that a city council has no authority to refer zoning matters to the electorate where state statute, authorizing zoning, vested the zoning power, not in the local electorate, but in the city council. The court added its view that the *initiative* process would not be available as a mode for amending a comprehensive zoning plan since such would violate due process within the meaning of Euclid and Washington, supra. See, City of Scottsdale v. Superior Court, State of Arizona, 103 Ariz. 204, 439 P.2d 290 (1968).

3. It has been elsewhere held that, once legislation authorizing comprehensive zoning has been adopted, city council changes from one class to another is merely administrative, rather than legislative and, therefore, not subject to referendum laws applicable to legislation. Kelley v. John, 162 Neb. 319 [City of McCook,] 75 N.W.2d 713 (1956); Minneapolis-Honeywell Regulator Co. v. Nadasdy, 247 Minn. 159, 76 N.W.2d 670 (1956).

a state's legislative process and, being founded on neutral principles, should be exempt from federal court restraints, and, further, that if electors have a legal right to referendum, their motive in invoking that right would be immaterial even if such could be ascertained.

In Spaulding v. Blair, 403 F.2d 862 (4th Cir. 1968), the Court of Appeals affirmed the District Court's dismissal of an action brought to prevent submission of certain open housing legislation to referendum election, pointing out that the constitutional validity of our federalism depends in large measure on the state's legislative processes being exempt from federal court restraints to the extent that the states do not significantly involve themselves in deprivation of fundamental rights; that the holding of a referendum is neutral and, even if the voters fail to adopt the measure, this would not, itself, constitute such forbidden involvement; that the rejection of a referendumed measure does not and cannot derogate from any constitutionally guaranteed rights otherwise involved.

It is true that in Hunter v. Erickson, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969) the Supreme Court held invalid a city charter provision to the effect that any ordinance regulating real property "on the basis of race, color, religion, natural origin or ancestry" must first be approved by a majority of the electors, i. e., an automatic referendum, on the ground that the charter provision was discriminatorily directed only to ordinances regulating property on the basis of race, etc., thus disadvantaging those minorities who would benefit from laws barring racial discrimination. However, we view that decision, as did Harlan, J., and Stewart, J., (pp. 393–396, 89 S.Ct. 557), as recognizing that, if it had not been for the selective and discriminatory nature of the charter referendum provision, there could have been no objection to a referendum of such fair housing or other legislation, under a referendum law of general application and founded on neutral principles.

California's referendum statute, Election Code Sections 4051, 4052, authorized by its Constitution, Art. IV, Sec. I and under which the referendum here questioned was authorized and conducted, is not selective or discriminatory (as was the referendum provision involved in Hunter v. Erickson). It is not, therefore, a disadvantage to any particular class that would benefit from any particular kind of legislation. The California referendum statute applies quite broadly to all kinds of legislation and, therefore, groups interested in obtaining or changing property zoning are put to no greater disadvantage in the legislative process than other groups interested in other kinds of legislation.

Having in mind the established constitutionality and basic importance of state referendum statutes, this court concludes that plaintiff's attack upon the constitutionality of the California referendum statute, as applied to zoning ordinances, is obviously without merit and is unsubstantial within the meaning of Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933) and Wicks v. Southern Pacific Company, 231 F.2d 130 (9th Cir. 1956) and that no three-judge court is required under Title 28 U.S.C. § 2281, unless the constitutionality of California's referendum statute may be substantially attacked on some other ground.

Plaintiff contends that the California referendum process is unconstitutional for the further reason that it deprives plaintiffs of certain rights secured to them under the Civil Rights Act of 1964 (42 U.S.C.Sec. 2000d) and under the Fair Housing Act of 1968 (42 U.S.C.Sec. 3601 et seq.) and, therefore, is invalid because of the Supremacy Clause of the United States Constitution, Art. VI, Sec. 2.

The Civil Rights Act of 1964 (42 U.S.C.Sec. 2000d) provides that no person shall, on the grounds of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving federal financial assistance.

This statute does not suggest any reason for holding the California referendum statutes, as such or as applied to plaintiffs, unconstitutional. There is no issue here concerning racial discrimination against plaintiff under any program or activity receiving federal assistance. The only such program or activity here involved is the proposed housing project of plaintiffs themselves.

The Fair Housing Act of 1968 (42 U.S.C.Sec. 3604) provides that it shall be unlawful to discriminate, on grounds of race, color, religion or national origin, in the sale or rental of dwellings or in the financing or real estate services connected therewith; Section 3615 provides that any law of a state or political subdivision that purports to require or permit any such discriminatory practice shall to that extent be invalid.

■ This Fair Housing Act provision is clearly inapplicable to the present case in which we have no issue concerning any state or local law purporting to require or permit racial discrimination in the rental or sale of dwellings or in the financing or real estate services connected therewith.

We do not know of any other federal statute securing to plaintiff the right to have real property zoned in any particular classification merely because someone wishes to build a multi-family housing project, federally financed or otherwise, in an area already validly zoned for single family use.

Further, the state referendum statute is entirely neutral so far as these matters are concerned.

We conclude, therefore, that plaintiffs' attack on the constitutionality of the California referendum statute, considered in the light of the Supremacy Clause, is obviously without merit and unsubstantial and, since the state's referendum statute is the only statute whose constitutionality is questioned in this case, we conclude that no three-judge court is required under Title 28 U.S.C. Section 2281.[4]

■ We have in mind that it has been held that although a state may take a neutral position with respect to *private* racial discrimination, any significant state involvement in private discrimination could amount to unconstitutional state action. Reitman v. Mulkey, 387 U.S. 369, 374–375, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

■ It is also true that, when official state action involves, not merely the repeal of an existing law forbidding racial discrimination, but is intended to and does in effect authorize racial discrimination in housing, the state may be held to have significantly involved itself in invidious discrimination. Reitman v. Mulkey, supra, 387 U.S. p. 380–814.

In the pending case, however, the referendum did not result in any state statute, or any local ordinance authorizing housing discrimination (as was found to be the effect of the constitutional amendment voted by the California electorate in *Reitman*.)

Indeed, the referendum in the pending case did not result in the enactment or even the repeal of any legislation whatsoever—statute, constitutional amendment, ordinance or otherwise. As already pointed out, the effect of the referendum proceeding (See, Cal.Election Code §§ 4051, 4052) was to prevent the zoning ordinance, as passed by the City Council, from going into effect pending

---

4. It is unnecessary, therefore, to pass upon the further question whether plaintiffs' suit (in which the only defendants are Union City, a municipality, and its local officials) may be said to be a challenge to the constitutionality of a "state statute," within the meaning of the three-judge court requirement, 28 U.S.C. Section 2281, or merely a challenge to local, as distinguished from statewide legislative action and, if the latter, not covered by Section 2281. See, for a summary on this subject: Landry v. Daley, 280 F.Supp. 929 (D.C.Ill.1967) and cases cited therein.

the election at which it was finally rejected.

We have, therefore, no statute, no constitutional provision, nor any ordinance, resulting from the referendum, which could possibly affect the constitutional rights of plaintiffs or anyone else. There is, therefore, (apart from the entirely neutral California referendum statutes, themselves, which we have already considered) no other legislation before us as to which an issue of constitutionality is presented. We have only the negation by the voters of Union City of what otherwise would have become a new zoning ordinance. There is, therefore, no question here, as there was in *Reitman,* of a state law which so authorizes racial discrimination as to amount to state involvement in private racial discrimination and, therefore, to invidious discrimination on the part of the state itself.

*Application for Preliminary Injunction*

Plaintiffs further contend, however, that entirely apart from the question of the constitutionality of any state law, defendants are guilty of violation of the Civil Rights Act of 1870 (42 U.S.C. Section 1983) which provides that any person who, under color of any statute, ordinance, regulation, custom or usage of a state, subjects any citizen to the deprivation of any rights secured by the Constitution and laws, shall be liable to the party injured in an action at law or suit in equity.

Plaintiffs, invoking the jurisdiction of this court over any such suit (28 U.S.C. Sec. 1343(3)), seeks to support that application for injunctive relief upon allegations to the effect that in this particular case the state referendum statute, however valid in and of itself, was in fact used for the purpose and with the effect of depriving plaintiffs of the benefit of the equal protection and due process clauses of the Fourteenth Amendment in that the referendum statute was invoked and the election result was reached, on grounds of racial discrimination to prevent plaintiffs, low income, Spanish speaking members of a minority group, from going forward with their large, multi-family housing project at the Baker Road site.

Thus, a factual issue is raised concerning the reasons, motives and purpose of those who invoked the referendum process and of those who voted at the referendum election.

We have well in mind that a court, when attempting to identify discriminatory state action, may take into consideration the historical context and conditions existing prior to the action and also its immediate objective and ultimate effect in terms of equal protection or due process of law. Reitman v. Mulkey, 387 U.S. 369–373, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967).

An examination of the evidentiary record presented by the parties leads this court to find that plaintiffs have not made a sufficient prima facie showing to warrant preliminary injunctive relief.

Although the referendum process admittedly resulted in rejection of rezoning the Baker Road property from agricultural-single family to multi-family classification, there is no more reason to find that this was done on the ground of invidious racial discrimination any more than on perfectly legitimate environmental grounds which are always and necessarily involved in zoning issues.[5]

---

5. It is unnecessary, therefore, to reach the question whether this suit, considered apart from any question of statutory unconstitutionality and merely as a suit for relief under Section 1983, can be brought under the Civil Rights Act, Title 42 U.S.C. § 1981 et seq., against these particularly named defendants, i. e., the City, Mayor, Vice-Mayor and City Clerk.

Clearly, a municipal defendant, such as Union City, is not subject to suit under 1983 of the Civil Rights Act, see Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961).

Furthermore, there is no allegation that the individual officers named as defend-

This memorandum, setting forth findings of fact and conclusions of law, is filed in support of the order of this court made on December 16, 1969, denying plaintiffs' motion to convene a three judge court to test the validity of California Election Code § 4051 et seq., as applied to zoning ordinances, and denying the plaintiffs' motion for a preliminary injunction directing defendants to put into effect the zoning changes necessary to enable plaintiffs to construct the housing project on the Baker Road site in Union City.

Accordingly, it is the order of this court that plaintiffs' motion to convene a three-judge court should be, and the same is, hereby denied.

Furthermore, it is the order of this court that the plaintiffs' motion for a preliminary injunction should be, and the same is, hereby denied.

ants did anything which deprived plaintiffs of their federally secured rights. However, assuming plaintiffs were able to allege some action on the part of these individual defendants, the question remains whether they would have a qualified privilege, giving them a defense against civil liability for acts done by them in good faith in performance of their official duty. Nelson v. Knox, 256 F.2d 312 (6th Cir. 1958); Parine v. Levine, 274 F.Supp. 268 (E.D.Mich. 1967).