John M. DIAZ, Plaintiff,

v.

The BOARD OF COUNTY COMMIS-SIONERS OF DADE COUNTY, Florida, Defendant.

No. 80–1935–CIV–EBD.

United States District Court, S. D. Florida.

Oct. 17, 1980.

Jose R. Capiro, Miami, Fla., for plaintiff.

Tobias Simon, Miami, Fla., and Judith Bass, New York City, for intervenor/plaintiff.

Murray A. Greenberg, Miami Beach, Fla., and Ellen Ball Mehta for defendant.

Jeffrey Rosenthal and Nelson Resnick, Miami, Fla., for defendant/intervenor.

## ORDER

EDWARD B. DAVIS, District Judge.

This action is for a preliminary injunction to prevent a referendum vote on a proposed ordinance. Plaintiffs also seek a declaratory judgment holding the proposal unconsti-

tutional and further relief under civil rights statutes.

Plaintiffs are three Spanish–surnamed men who are residents of Dade County, Florida. Plaintiff–intervenors are a nonprofit organization, Spanish American League Against Discrimination, and a 71-year–old Dade County resident who does not have full command of the English language, Eilgia Suarez.[1]

The plaintiffs seek to enjoin the defendants, the Board of County Commissioners of Dade County and the county's Supervisor of Elections, from placing a proposed ordinance on the ballot. Sections One and Two of the proposition would prohibit the expenditure of county funds for the purpose of utilizing any language other than English or for the promotion of any culture other than that of the United States, and would require all county governmental meetings and publications to be only in English. The proposed ordinance contains a severability clause, and by its own terms would not apply where a translation is mandated by state or federal law.[2] Defendants have moved for a stay of these proceedings until after the general election.

The proposal reached the ballot stage through the efforts of defendant–intervenors, a political committee named "Citizens of Dade United." The organization's members circulated petitions for an initiative election on the proposal, pursuant to the Home Rule Charter for Metropolitan Dade County, § 7.01 (1957). The petitions were certified by the defendants, and the measure was ordered onto the ballot.

All parties asked for an expedited resolution of the injunction issue in view of the short time remaining before the November 4, 1980, general election. At a hearing held on October 14, 1980, the parties agreed that a preliminary injunction would be proper only if the proposal was unconstitutional in its entirety, the standard given in a line of Florida cases.[3] The issues at hand involve questions of law rather than fact, thus allowing a judgment to be made without the necessity of a full evidentiary hearing.

Plaintiffs who seek preliminary injunctions must meet a heavy burden. This is certainly true even in actions involving less sensitive issues than prohibiting a referendum. While the ultimate decision is in the sound discretion of the Court, it must first find that the plaintiffs will suffer an irreparable injury unless the preliminary injunction is granted. The plaintiffs must have a clear probability of ultimate success on the underlying issues, and the Court must balance the damage and inconvenience to the parties and the public. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952); 7 Moore's Federal Practice ¶ 65.-04[2].

---

1. All plaintiff parties will hereafter be referred to as "plaintiffs" unless the context requires otherwise.

2. The ordinance, without its title, reads:

   *Section 1.* The expenditure of county funds for the purpose of utilizing any language other than English, or promoting any culture other than that of the United States, is prohibited.

   *Section 2.* All county governmental meetings, hearings and publications shall be in the English language only.

   *Section 3.* The provisions of this ordinance shall not apply where a translation is mandated by State or Federal law.

   *Section 4.* If any section, subsection, sentence, clause, phrase, words or provisions of the ordinance is held invalid or unconstitu-

tional, the remainder of this ordinance shall not be affected by said holding.

   *Section 5.* It is the intention of the People of Dade County, Florida, that the provisions of this ordinance shall become and be made a part of the Code of Metropolitan Dade County, Florida.

   *Section 6.* This ordinance shall take effect on the day after the election approving this ordinance.

3. *Dade County v. Dade County League of Municipalities*, 104 So.2d 512 (Fla.1958); *Rivergate Restaurant Corp. v. Metropolitan Dade County*, 369 So.2d 679 (Fla. 3d DCA 1979); cf. *Bd. of County Comm'rs v. Wilson*, 386 So.2d 556 (Fla.1980) ("facial" unconstitutionality); *City of Miami Beach v. Frankel*, 363 So.2d 555, 557 n.2 (Fla.1978) ("long list" of constitutional infirmities).

■ The proposed ordinance does not explicitly require the violation of any state or federal rights. Section Three expressly forbids the application of Sections One or Two when a translation is mandated by state or federal law. A reasonable construction of this provision would seem to include both constitutional and statutory law within the meaning of "State and Federal law." The plain language of Section Three makes it clear that no violation of the plaintiffs' state or federal rights concerning the use of Spanish is contemplated by the express wording of this ordinance. The proposition is therefore not unconstitutional in its entirety.[4]

■ Citizens have the unquestioned right to petition their governments for redress of what they believe are grievances. U.S. Const. amend. I; Fla. Const. art. I, § 5. One means of preserving this right is through the procedures of initiative, referendum and recall. *See* Home Rule Charter for Metropolitan Dade County, art. V.

■ Other constitutional rights conceivably can require interference with a referendum, but only in the most exceptional of circumstances. The judicial branch of government properly hesitates to prevent citizens from voting on matters raised by an exercise of the constitutional right to petition the government. To do otherwise would be to enter a political thicket studded with constitutional thorns.

■ The right to vote is the very essence of democracy. A candidate or issue on the ballot should almost always stay there. Thus, an election may only be enjoined when an immediate and irreparable violation of constitutional rights could not otherwise be prevented. *See Hamer v. Campbell*, 358 F.2d 215 (5th Cir.), *cert. denied*, 385 U.S. 851, 87 S.Ct. 76, 17 L.Ed.2d 79 (1966). In this action, the plaintiffs claim they will be damaged by the *results* of the referendum; they will not be damaged by the *act* of voting itself. This Court has decided that the act of voting must be allowed. A determination of the constitutionality of the results must wait until that now–hypothetical time when there may be actual results.

■ The petition for an injunction must also be denied because the issue of the proposal's constitutionality is not yet ripe for a decision. Courts avoid hypothetical questions and will not make a declaration of unconstitutionality when it is not necessary. *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

The plaintiffs here have ably argued that the proposed ordinance, if enacted, could violate constitutional rights. That is possible. It is also possible, however, that the voters of Dade County will not approve the proposal, or that county officials will correctly interpret the ordinance, if enacted, only in ways which do not violate the constitutional rights of interested parties. It is simply too early to tell.

The precedents cited by the plaintiffs are instructive. In the cases most heavily relied on by the plaintiffs, the Supreme Court of the United States was passing on the constitutionality of matters which had already become law. For instance, the United States Supreme Court affirmed the California Supreme Court's invalidation of a state constitutional amendment in *Reitman v. Mulkey*, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). The amendment, which would have erased California's fair housing laws, had been passed by the voters in a referendum.

Earlier, the California Supreme Court had refused to enjoin the referendum from appearing on the ballot. That court's reasoning applies in the present circumstances:

> "[I]t would be more appropriate to pass on those questions after the election * * * than to interfere with the power of the people to propose laws and amendments to the Constitution and to adopt or reject the same at the polls."

---

4. See Notes 2 and 3, *supra*.

For instance, if the County has obligated itself to use Spanish as a condition of receiving federal funds for a particular program, the proposed ordinance would not apply.

*Mulkey v. Reitman,* 64 Cal.2d 529, 535, 50 Cal.Rptr. 881, 885, 413 P.2d 825, 829 (1966) (quoting *Lewis v. Jordan,* No. Sac. 7549 (Cal. June 3, 1964)). The use of injunctions to prohibit referenda has been rejected by federal courts in similar cases. *Ranjel v. City of Lansing,* 417 F.2d 321 (6th Cir. 1969), *cert. denied,* 397 U.S. 980, 90 S.Ct. 1105, 25 L.Ed.2d 390 (1970); *Spaulding v. Blair,* 403 F.2d 862 (4th Cir. 1968); *see Southern Alameda Spanish Speaking Organization v. City of Union City,* 314 F.Supp. 967, 969 (N.D.Cal.1970). *Contra, Holmes v. Leadbetter,* 294 F.Supp. 991 (E.D.Mich.1968); *Otey v. Common Council of City of Milwaukee,* 281 F.Supp. 264 (E.D. Wisc.1968); *Ellis v. Mayor of Baltimore,* 234 F.Supp. 945 (D.Md.1964), *aff'd on other grounds,* 352 F.2d 123 (4th Cir. 1965).

In similar fashion, the Supreme Court was dealing with enacted law in the other cases cited by plaintiffs. The law which would require fair housing ordinances to be approved by referenda in *Hunter v. Erickson,* 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969), had itself been enacted by a referendum. No published report of the case indicates a successful attempt (if one was indeed made) to enjoin the original referendum. *Arlington Heights v. Metropolitan Housing Authority,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) also dealt with a real, rather than hypothetical, situation.

The plaintiffs may have valid arguments *if* the proposed ordinance is passed by the voters of Dade County and *if* the officials of the county interpret the enacted ordinance in a manner which violates constitutional rights. The Court today only decides that those questions are not ripe for adjudication and that, on these facts, the procedural machinery of the people's right to petition their government should not be stopped.

It is clear that the proposition is not unconstitutional in its entirety and that the plaintiffs have not met the stringent standards required for the grant of a preliminary injunction. It is therefore

 ORDERED AND ADJUDGED that the plaintiff–intervenors' petition for a preliminary injunction is DENIED,[5] and the defendants' motion for a stay of the proceedings is DENIED.

---

**5.** The Court notes that this Order denying a preliminary injunction is immediately appealable. 28 U.S.C. § 1292(a)(1) (1976); *see Stell v. Savannah–Chatham County Bd. of Educ.,* 318 F.2d 425 (5th Cir. 1963). The Court therefore sees no need to certify the question presented, as was requested.