## EUBANK v. CITY OF RICHMOND.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 48. Argued November 12, 13, 1912.—Decided December 2, 1912.

While the police power of the State extends not only to regulations promoting public health, morals and safety but also to those promoting public convenience and general prosperity, it has its limits and must stop when it encounters the prohibitions of the Federal Constitution.

A clash between the police power of the State and constitutional limitations will not be lightly inferred, but the exact point of contact cannot be determined by any general formula in advance. *Hudson Water Co.* v. *McCarter*, 209 U. S. 349.

Governmental powers must be flexible and adaptive.

The party assailing the constitutionality of a state police statute must clearly show that it offends constitutional guaranties in order to justify the court in declaring it invalid.

A municipal ordinance requiring the authorities to establish building lines on separate blocks back of the public streets and across private property on the request of less than all of the owners of the property affected is not a valid exercise of police power, nor does it serve the public safety, convenience or welfare.

Such an ordinance takes private property, not for public welfare but for convenience of other owners of property, and deprives the person whose property is taken of his property without due process of law and is unconstitutional under the Fourteenth Amendment.

The ordinance of the city of Richmond based on Chapter 349 of the Laws of Virginia of 1908, requiring the municipal authorities to establish building lines in any block on request of the owners of two-thirds of the property is unconstitutional as an attempt to deprive non-assenting owners of their property without due process of law.

110 Virginia, 749, reversed.

THE facts, which involve the constitutionality under the Fourteenth Amendment of an ordinance of the city of Richmond, Virginia, fixing a building line, are stated in the opinion.

*Mr. S. S. P. Patteson* for plaintiff in error.

*Mr. H. R. Pollard* for defendant in error:

Whether or not the power granted by the legislature to cities and towns to establish building lines was lawfully exercised by the council of the city of Richmond, is not open for consideration in this court. *Gundling* v. *Chicago,* 177 U. S. 188; *Williams* v. *Arkansas,* 217 U. S. 79, 88; *Wilson* v. *Eureka City,* 173 U. S. 32, 35.

The Virginia act of 1908, authorizing regulations concerning the building of houses, and, in their discretion, in particular districts or along particular streets, to prescribe and establish building lines or to require property owners in certain localities or districts to leave a certain percentage of lots free from buildings, is constitutional and valid. *Chicago, B. & Q. R. Co.* v. *Illinois,* 200 U. S. 561, 592; McQuillin on Municipal Ordinances, § 32; 29 Cyc. 859; *Bacon* v. *Walker,* 204 U. S. 311; Dillon on Municipal Corp. § 696; *People* v. *D'Oench,* 111 N. Y. 359; *Welch* v. *Swasey,* 193 Massachusetts, 364; *S. C.,* aff'd 214 U. S. 91; 2 Blackstone's Commentaries, p. 18; *Rochester* v. *West,* 164 N. Y. 510; *State* v. *Hurley,* 73 Connecticut, 536; *Laurel Hill Cemetery* v. *San Francisco,* 216 U. S. 358, 365; *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 355. See article of Professor Seligman in 25 Pol. Sci. Quarterly, 217.

This court, in a larger sense than any other court of the land, has taken judicial cognizance of the everyday facts of modern complex, social and industrial life, and has responded thereto with less apparent reluctance than the courts of last resort of most of the States.

*Prima facie* every act of a legally constituted legislative body is constitutional, and the person who assails an act on that account, must clearly establish his contention. *Sinking Fund Cases,* 99 U. S. 700, 718; *Powell* v. *Pennsylvania,* 127 U. S. 678, 684.

The rule of the construction of a legislative act which is apparently in restraint of private rights, must not be confounded with the rule which governs in the determination of the question of the constitutionality of a statute. *Bostock* v. *Sams,* 95 Maryland, 400, does not sustain the contention that the presumption should be against the constitutionality of this legislative act.

There is no question concerning the proper construction of the statute, but only whether the statute, not the ordinance, is constitutional, for the ordinance in this court, as hereinbefore shown, must stand or fall with the statute, it having been enacted in pursuance of express authority conferred by the statute.   Dillon on Municipal Corp., § 600; *State* v. *Clarke,* 54 Missouri, 17, 36; *Dist. of Col.* v. *Waggaman,* 4 Mackey (D. C.), 328.

Concerning a similar delegation of power see *Danville* v. *Hatcher,* 101 Virginia, 532; *Soon Hing* v. *Crowley,* 113 U. S. 710; *Wabash R. R. Co.* v. *Defiance,* 167 U. S. 102; *Strasburger* v. *Commissioners,* 5 Mackey (D. C.), 389.

While neither a state nor a municipal statute enacted to accomplish purposes purely esthetic, which embarrasses property rights, can be sustained as constitutional, Tiedeman, State and Federal Control, p. 755, there is nothing in the record as hereinbefore set out to sustain the contention that the General Assembly of Virginia enacted the statute for esthetic considerations only.   *Quong Wing* v. *Kirkendall,* 223 U. S. 59.

·As above pointed out the presumption is in favor of the constitutionality of the act.   The failure of the statute to make provision for compensation to the lot owner on account of depriving him of the right to occupy his entire

lot with buildings does not invalidate the act, and such a contention is without merit.  *Watertown* v. *Mayo,* 109 Massachusetts, 315, 318.

In order to justify the rejection of the statute as unconstitutional it must be wholly, not partially, for esthetic purposes.  *Varney & Green* v. *Williams,* 155 California, 318; *S. C.,* 23 L. R. A. (N. S.) (decided in 1910).

The legislature may limit the height of buildings in a section of the city which is devoted to fine buildings and works of art, for the purpose of protecting such buildings and works of art from the ravages of fire.  *Cockran* v. *Preston,* 108 Maryland, 220.

While the State cannot compel the surrender of private rights in property for purely esthetic purposes, still, if the primary and substantive purposes of the legislature are such as to justify the act, considerations of taste and beauty may enter in as auxiliary.  *Haller Sign Works* v. *Physical Culture School,* 249 Illinois, 436.

MR. JUSTICE MCKENNA delivered the opinion of the court.

In error to review a judgment of the Hustings Court of the city of Richmond affirming a judgment of the Police Court of the city imposing a fine of $25.00 on plaintiff in error for alleged violation of an ordinance of the city fixing a building line.  The judgment was affirmed by the Supreme Court of the State.  110 Virginia, 749.

Plaintiff in error attacks the validity of the ordinance and the statute under which it was enacted on the ground that they infringe the Constitution of the United States in that they deprive plaintiff in error of his property without due process of law and deny him the equal protection of the laws.

The statute authorized the councils of cities and towns, among other things, "to make regulations concerning the

building of houses in the city or town, and in their discretion, . . . in particular districts, or along particular streets, to prescribe and establish building lines, or to require property owners in certain localities or districts to leave a certain percentage of lots free from buildings, and to regulate the height of buildings." Acts of 1908, p. 623, 4.

By virtue of this act the city council passed the following ordinance: "That whenever the owners of two-thirds of the property abutting on any street shall, in writing, request the committee on streets to establish a building line on the side of the square on which their property fronts, the said committee shall establish such line so that the same shall not be less than five feet nor more than thirty feet from the street line. . . . And no permit for the erection of any building upon such front of the square upon which such building line is so established shall be issued except for the construction of houses within the limits of such line." A fine of not less than twenty-five nor more than five hundred dollars is prescribed for a violation of the ordinance.

The facts are as follows: Plaintiff in error is the owner of a lot thirty-three feet wide on the south side of Grace street between Twenty-eighth and Twenty-ninth streets. He applied for and received a permit on the nineteenth of December, 1908, to build a detached brick building to be used for a dwelling, according to certain plans and specifications which had been approved by the building inspector, dimensions of the building to be 26x59x28 feet high.

On the ninth of January, 1909, the street committee being in session, two-thirds of the property owners on the side of the square where plaintiff in error's lot is situated, petitioned for the establishment of a building line, and in accordance with the petition a resolution was passed establishing a building line on the line of a majority

of the houses then erected and the building inspector ordered to be notified. This was done, and the plaintiff in error given notice that the line established was "about fourteen (14) feet from the true line of the street and on a line with the majority of the houses." He was notified further that all portions of his house "including Octagon Bay, must be set back to conform to" that line. Plaintiff in error appealed to the Board of Public Safety, which sustained the building inspector.

At the time the ordinance was passed the material for the construction of the house had been assembled, but no actual construction work had been done. The building conformed to the line, with the exception of the octagon bay window referred to above, which projected about three feet over the line.

The Supreme Court of the State sustained the statute, saying (p. 752) that it was neither "unreasonable nor unusual" and that the court was "justified in concluding that it was passed by the legislature in good faith, and in the interest of the health, safety, comfort, or convenience of the public, and for the benefit of the property owners generally who are affected by its provisions; and that the enactment tends to accomplish all, or at least some, of these objects." The court further said that the validity of such legislation is generally recognized and upheld as an exercise of the police power.

Whether it is a valid exercise of the police power is the question in the case, and that power we have defined, as far as it is capable of being defined by general words, a number of times. It is not susceptible of circumstantial precision. It extends, we have said, not only to regulations which promote the public health, morals, and safety, but to those which promote the public convenience or the general prosperity. *C., B. & Q. Ry. Co.* v. *Drainage Commissioners*, 200 U. S. 561. And further, "It is the most essential of powers, at times the most insistent, and

always one of the least limitable of the powers of government." *District of Columbia* v. *Brooke,* 214 U. S. 138, 149. But necessarily it has its limits and must stop when it encounters the prohibitions of the Constitution. A clash will not, however, be lightly inferred. Governmental power must be flexible and adaptive. Exigencies arise, or even conditio:.s less peremptory, which may call for or suggest legislation, and it may be a struggle in judgment to decide whether it must yield to the higher considerations expressed and determined by the provisions of the Constitution. *Noble State Bank* v. *Haskell,* 219 U. S. 104. The point where particular interests or principles balance "cannot be determined by any general formula in advance." *Hudson Water Co.* v. *McCarter,* 209 U. S. 349, 355.

But in all the cases there is the constant admonition both in their rule· and examples that when a statute is assailed as offending against the higher guaranties of the Constitution it must clearly do so to justify the courts in declaring it invalid. This condition is urged by defendant in error, and attentive to it we approach the consideration of the ordinance.

It leaves no discretion in the committee on streets as to whether the street line shall or shall not be established in a given case. The action of the committee is determined by two-thirds of the property owners. In other words, part of the property owners fronting on the block determine the extent of use that other owners shall make of their lots, and against the restriction they are impotent. This we emphasize. One set of owners determine not only the extent of use but the kind of use which another set of owners may make of their property. In what way is the public safety, convenience or welfare served by conferring such power? The statute and ordinance, while conferring the power on some property holders to virtually control and dispose of the proper rights of others, creates

no standard by which the power thus given is to be exercised; in other words, the property holders who desire and have the authority to establish the line may do so solely for their own interest or even capriciously. Taste (for even so arbitrary a thing as taste may control) or judgment may vary in localities, indeed in the same locality. There may be one taste or judgment of comfort or convenience on one side of a street and a different one on the other. There may be diversity in other blocks; and viewing them in succession, their building lines may be continuous or staggering (to adopt a word of the mechanical arts) as the interests of certain of the property owners may prompt against the interests of others. The only discretion, we have seen, which exists in the Street Committee or in the Committee of Public Safety, is in the location of the line, between five and thirty feet. It is hard to understand how public comfort or convenience, much less public health, can be promoted by a line which may be so variously disposed.

We are testing the ordinance by its extreme possibilities to show how in its tendency and instances it enables the convenience or purpose of one set of property owners to control the property right of others, and property determined, as the case may be, for business or residence— even, it may be, the kind of business or character of residence. *One* person having a two-thirds ownership of a block may have that power against a *number* having a less collective ownership. If it be said that in the instant case there is no such condition presented, we answer that there is control of the property of plaintiff in error by other owners of property exercised under the ordinance. This, as we have said, is the vice of the ordinance, and makes it, we think, an unreasonable exercise of the police power.

The case requires no further comment. We need not consider the power of a city to establish a building line or regulate the structure or height of buildings. The cases

which are cited are not apposite to the present case. The ordinances or statutes which were passed on had more general foundation and a more general purpose, whether exercises of the police power or that of eminent domain. Nor need we consider the cases which distinguish between the esthetic and the material effect of regulations the consideration of which occupies some space in the argument and in the reasoning of the cases.

*Judgment reversed and case remanded for further proceedings not inconsistent with this opinion.*