## WASHINGTON ᴇx ʀᴇʟ SEATTLE TITLE TRUST COMPANY, TRUSTEE, ᴇᴛᴄ. *v.* ROBERGE, SUPERINTENDENT OF BUILDING OF SEATTLE.

No. 29. Argued October 11, 12, 1928.—Decided November 19, 1928.

*Mr. Corwin S. Shank,* with whom *Mr. Glenn J. Fairbrook* was on the brief, for plaintiff in error.

*Mr. A. C. Van Soelen,* with whom *Mr. Thomas J. L. Kennedy* was on the brief, for defendant in error.

Mr. Justice Butler delivered the opinion of the Court.

Since 1914, the above named trustee has owned and maintained a philanthropic home for aged poor. It is located about six miles from the business center of Seattle on a tract 267 feet wide, extending from Seward Park Avenue to Lake Washington, having an average depth of more than 700 feet and an area of about five acres. The home is a structure built for and formerly used as a private residence. It is large enough to accommodate about 14 guests and usually it has had about that number. The trustee proposes to remove the old building and in its place at a cost of about $100,000 to erect an attractive two and one-half story fireproof house large enough to be a home for 30 persons. The structure would be located 280 feet from the avenue on the west and about 400 feet from the lake on the east, cover four per cent. of the tract and be mostly hidden by trees and shrubs. The distance between it and the nearest building on the south would be 110 feet, on the north 160 and on the west 365.

A comprehensive zoning ordinance (No. 45382) passed in 1923 divided the city into six use districts and provided that, with certain exceptions not material here, no building should be erected for any purpose other than that permitted in the district in which the site is located. § 2. The land in question is in the " First Residence District." The ordinance permitted in that district single family dwellings, public schools, certain private schools, churches, parks, and playgrounds, an art gallery, private conservatories for plants and flowers, railroad and shelter stations. § 3 a. And, upon specified conditions, it also permitted garages, stables, buildings for domestic animals, the office of physician, dentist or other professional person when located in his or her dwelling (§ 3 b), fraternity, sorority and boarding houses, a community clubhouse, a memorial building, nurseries, greenhouses, and buildings necessary

for the operation of public utilities. § 3 c. It declared that the section should not be construed to prohibit the use of vacant property in such district for gardening or fruit raising, or its temporary use for fairs, circuses, or similar purposes. § 3 e. By an ordinance (No. 49179) passed in 1925, § 3 c was amended by adding: "A philanthropic home for children or for old people shall be permitted in First Residence District when the written consent shall have been obtained of the owners of two-thirds of the property within four hundred (400) feet of the proposed building." *

---

* The pertinent provisions of the ordinance as amended follow:
The title is:

An ordinance regulating and restricting the location of trades and industries; regulating and limiting the use of buildings and premises and the height and size of buildings; providing for yards, courts or other open spaces; and establishing districts for the said purposes.

Section 2:

(a) For the purpose of regulating, classifying and restricting the location of trades and industries and the location of buildings designed, erected or altered for specified uses, The City of Seattle is hereby divided into six (6) Use Districts, namely: First Residence District, Second Residence District, Business District, Commercial District, Manufacturing District and Industrial District.

(b) The boundaries of the aforesaid districts are laid out and shown upon the map designated "Use Map," filed in the office of the City Comptroller and ex-officio City Clerk. . . . The Use Districts on said map are hereby established.

(c) . . . No building shall be erected, altered, or used, nor shall any premises be used, for any purpose other than that permitted in the use district in which such building or premises is located.

(d) Where a use in any district is conditioned upon a public hearing or the consent of surrounding property, such use if existing at the time this ordinance becomes effective, shall be allowed repairs or rebuilding without such hearing or consent.

Section 3: First Residence District.

(a) The following uses only are permitted in a First Residence District:

(1) Single Family Dwellings.

Subsequently the trustee, without having obtained consents of other landowners in accordance with the provisions just quoted, applied for a permit to erect the new home. It is the superintendent's official duty to issue permits for buildings about to be erected in accordance with valid enactments and regulations. He denied the application solely because of the trustee's failure to furnish such consents. Then the trustee brought this suit in the superior court of King County to secure its judgment and writ commanding the superintendent to issue the permit; and it maintained throughout that the ordinance, if construed to prevent the erection of the proposed building, is arbitrary and repugnant to the due process and equal protection clauses of the Fourteenth

(2) Public Schools.

(3) Private Schools in which prescribed courses of study only are given and are graded in a manner similar to public schools or are of a higher degree.

(4) Churches.

(5) Parks and Playgrounds (including usual park buildings).

(6) Art Gallery or Library Building.

(7) Private Conservatories for Plants and Flowers.

(8) Railroad and Shelter Stations.

(b) In a First Residence District, buildings and uses such as are ordinarily appurtenant to dwellings shall be permitted, subject to the limitations herein provided. A garage in a first residence district shall not occupy more than seven per cent (7%) of the area of the lot, and the business of repairing motor vehicles shall not be conducted therein. In the case of a private stable, the written consent must be obtained of the owners of fifty (50) per cent of the property within a radius of two hundred (200) feet of the proposed building. The number of animals, not counting sucklings, in a private stable shall not exceed one for every two thousand (2,000) square feet contained in the area of the lot on which such building is located. Not more than one appurtenant building having a floor area of not to exceed thirty (30) square feet which is used for the housing of domestic animals or fowls shall be permitted on any lot in the First Residence District, except that a building of greater area or a greater number of buildings shall be permitted when the written consent

Amendment. That court held that the amended ordinance so construed is valid and dismissed .the case. Its judgment was affirmed by the highest court of the State. 144 Wash. 74

The trustee concedes that our recent decisions require that in its general scope the ordinance be held valid. *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365. *Zahn* v. *Board of Public Works,* 274 U. S. 325. *Gorieb* v. *Fox,* 274 U. S. 603. *Nectow* v. *Cambridge,* 277 U. S. 183. Is the delegation of power to owners of adjoining land to make inoperative the permission, given by § 3 (c) as amended, repugnant to the due process. clause? Zoning

---

shall have been obtained of the owner's of fifty (50) per cent of the dwellings within two hundred (200) feet of the proposed building; provided that such consent shall not be required if the number of said dwellings is less than four (4). The office of a physician, dentist, or other professional person when located in his or her dwelling, also home occupations engaged in by individuals within their dwellings shall be considered as accessory uses, provided that no window display is made or any sign shown other than one not exceeding two (2) square feet in area and bearing only the name and occupation of the occupant. The renting of rooms for lodging purposes only, for the accommodation of not to exceed six (6) persons, in a single family dwelling shall be considered an accessory use.

.(c) .A fraternity house, sorority house or boarding house when occupied by students and supervised by the authorities of a public educational institution, a private school other than one specified in paragraph (a) this section (3), a community club house, memorial building, nursery or greenhouse, or a building which is necessary for the proper operation of a public utility may be permitted by the Board of Public Works after a public hearing. *A philanthropic home for children or for old people shall be permitted in First Residence District when the written consent shall have been obtained of the owners of two-thirds of the property within four hundred (400) feet of the proposed building.*

. . . .
(e) Nothing in this section shall be construed to prohibit the use of vacant property for gardening or fruit raising or its temporary use, conformable to Law for fairs, circuses or similar purposes.

measures must find their justification in the police power exerted in the interest of the public. *Euclid* v. *Ambler Realty Co., supra,* 387. "The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare." *Nectow* v. *Cambridge, supra,* p. 188. Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities. *Lawton* v. *Steele,* 152 U. S. 133, 137. *Adams* v. *Tanner,* 244 U. S. 590, 594. *Meyer* v. *Nebraska,* 262 U. S. 390, 399–400. *Burns Baking Co.* v. *Bryan,* 264 U. S. 504, 513. *Norfolk Ry.* v. *Public Service Comm'n,* 265 U. S. 70, 74. *Pierce* v. *Society of Sisters,* 268 U. S. 510, 534–535. *Weaver* v. *Palmer Bros. Co.,* 270 U. S. 402, 412, 415. *Tyson & Brother* v. *Banton,* 273 U. S. 418, 442.

The right of the trustee to devote its land to any legitimate use is properly within the protection of the Constitution. The facts disclosed by the record make it clear that the exclusion of the new home from the first district is not indispensable to the general zoning plan. And there is no legislative determination that the proposed building and use would be inconsistent with public health, safety, morals or general welfare. The enactment itself plainly implies the contrary. The grant of permission for such building and use, although purporting to be subject to such consents, shows that the legislative body found that the construction and maintenance of the new home was in harmony with the public interest and with the general scope and plan of the zoning ordinance. The section purports to give the owners of less than one-half the land within 400 feet of the proposed building authority—

122

uncontrolled by any standard or rule prescribed by legis-
lative action—to prevent the trustee from using its land
for the proposed home. The superintendent is bound by
the decision or inaction of such owners. There is no pro-
vision for review under the ordinance; their failure to
give consent is final. They are not bound by any official
duty, but are free to withhold consent for selfish reasons
or arbitrarily and may subject the trustee to their will or
caprice. *Yick Wo* v. *Hopkins,* 118 U. S. 356, 366, 368.
The delegation of power so attempted is repugnant to
the due process clause of the Fourteenth Amendment.
*Eubank* v. *Richmond,* 226 U. S. 137, 143. *Browning* v.
*Hooper,* 269 U. S. 396.

*Cusack Co.* v. *City of Chicago,* 242 U. S. 526, involved
an ordinance prohibiting the putting up of any billboard
in a residential district without the consent of owners of
a majority of the frontage on both sides of the street in
the block where the board was to be erected The ques-
tion was whether the clause requiring such consents was
an unconstitutional delegation of power and operated to
invalidate the prohibition. The case was held unlike
*Eubank* v. *Richmond, supra,* and the ordinance was fully
sustained. The facts found were sufficient to warrant the
conclusion that such billboards would or were liable to
endanger the safety and decency of such districts. Pp.
529, 530. It is not suggested that the proposed new home
for aged poor would be a nuisance. We find nothing in
the record reasonably tending to show that its construc-
tion or maintenance is liable to work any injury, incon-
venience or annoyance to the community, the district or
any person. The facts shown clearly distinguish the pro-
posed building and use from such billboards or other uses
which by reason of their nature are liable to be offensive.

As the attempted delegation of power cannot be sus-
tained, and the restriction thereby sought to be put upon

the permission is arbitrary and repugnant to the due process clause, it is the duty of the superintendent to issue, and the trustee is entitled to have, the permit applied for.

We need not decide whether, consistently with the Fourteenth Amendment, it is within the power of the State or municipality by a general zoning law to exclude the proposed new home from a district defined as is the first district in the ordinance under consideration.

*Judgment reversed.*