No. 83-47

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

MIKE P.F. SHANNON & KATHY
SHANNON,

Petitioners and Appellants,

-vs-

CITY OF FORSYTH,

Respondent and Respondent.

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Russell K. Fillner argued, Billings, Montana

For Respondent:

William F. Meisburger argued, Forsyth, Montana

Submitted:    June 6, 1983

Decided:    July 14, 1983

Filed: JUL 14 1983

Ethel M. Harrison
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellants (the Shannons) filed a petition with the City of Forsyth seeking a waiver to locate a mobile home on a lot in a "Residential A" zoning district which excludes mobile homes. After the City Council denied their petition, the Shannons filed a petition for writ of review in the District Court of the Sixteenth Judicial District, Rosebud County. The District Court affirmed the decision of the City Council and this appeal followed.

The City of Forsyth is divided into four zoning districts: Residential A, Residential B, Commercial C, and Industrial D. Mobile homes are excluded from Residential A districts unless a person seeking a variance of the zoning restrictions submits a proper petition to the City Clerk and the City Council thereafter grants the variance. A proper petition must include 1) the signatures of at least 80% of the landowners residing within 300 feet of the proposed location of the mobile home; and 2) the signatures of the adjoining landowners.

On May 12, 1982, the Shannons presented a petition to the City Clerk of Forsyth seeking a variance in order to place a mobile home on their property at Lot 2, Block 42, which is located in a Residential A district. The petition contained the signatures of at least 80% of the landowners residing within 300 feet of the lot. However, since the petition did not contain the signatures of the adjoining landowners, it was returned to the Shannons on May 14, 1982.

When the Shannons discovered they could not obtain the necessary approval of the owners of adjoining Lot 3, they deeded a one-foot strip of land on the south boundary of Lot

2 to Mike Shannon's mother and step-father, Theresa and Rink Baukema. The Shannons also deeded all of adjoining Lot 1 to the Baukemas, who signed the petition as adjoining landowners. The Shannons thereafter resubmitted the petition.

On June 28, 1982, the City Council held a hearing on the Shannon's petition. At that time, Mike Shannon explained to the City Council that he had deeded the one-foot strip of land to the Baukemas to obtain their consent as adjoining landowners, since the owners of Lot 3 would not give their consent to the variance. The City Clerk then informed the City Council that three persons who had signed the original petition had called the Clerk's office on the morning of the hearing to request that their names be withdrawn from the petition. Another signator contacted a city alderman the day of the hearing to ask that his name also be removed from the petition.

The City Council thereafter denied the Shannons' petition because the Shannons had failed to obtain signatures from 80% of the owners residing within 300 feet of the lot and because of the Shannons' "attempt to circumvent the intent of the city code by deeding one foot of property" to the Baukemas.

The Shannons thereafter sought a writ of review in the District Court, which upheld the City Council's ruling. In so holding, the District Court stated, "In the present case the non-consenting landowner has done nothing. The effect of his doing nothing is that the City Council can do nothing except observe the zoning restriction. This is not a delegation of a legislative power to the non-consenting

landowners, because it is the city ordinance that restricts the petitioners' use of their property."

It should be noted that there are currently four mobile homes located on the eastern half of Block 42, which is where the Shannons' lot is located. One of these belongs to the owners of adjoining Lot 3, who refused to consent to the Shannons' petition. There are also no houses on the eastern half of Block 42.

The appellant presented two issues in this appeal:

1. Can the City Council remove names from a qualified petition where it acts on information received by its clerk over the telephone or orally from an alderman on the day of the hearing?

2. Is the zoning ordinance unconstitutional because it unlawfully delegates legislative authority and police power to adjoining landowners and landowners residing within 300 feet of the Shannons' property?

We need not discuss the first issue, since the City of Forsyth conceded in an agreed statement of facts presented in the District Court that the Shannons obtained the signatures of 80% of the landowners residing within 300 feet of the Shannons' property.

Next, the Shannons challenge the constitutionality of the zoning ordinance on the grounds that (1) it unlawfully delegates legislative authority to adjoining landowners and 80% of the landowners residing within 300 feet of their property, thus depriving them of due process and equal protection under the 1st and 14th Amendments of the United States Constitution and Article 2, §§4 and 17 of the Montana State Constitution; and (2) it represents an unwarranted

application of police power. We agree with the Shannons on both grounds.

To be upheld as a lawful delegation of legislative authority, a "consent" ordinance such as the one adopted by the City of Forsyth must contain standards or guidelines which can be used by a board of adjustment to judge the propriety of a neighbor's withholding of consent. See Eubank v. City of Richmond (1912), 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156; Janas v. Town Board & Zoning Board of Appeals (App. Div. 1976), 382 N.Y.2d 394; State ex rel. Daniels v. Kasten (Mo. App. 1964), 382 S.W.2d 714. A "consent" ordinance will fail if it is found to be arbitrary or capricious. See Seattle Title Trust Co. v. Roberge (1928), 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210; People v. Deeks (1969), 61 Misc.2d 1019; 307 N.Y.S.2d 914.

In this case, we find that the "consent" ordinance must fail on both counts. The ordinance provides no standard whatsoever by which the consents may be judged. The effect of the ordinance is to make the right to locate the mobile home in a "Residential A" district dependent wholly on the will and whim of the adjoining owners and 80% of the owners within 300 feet of the property without the application of any sensible fixed guidelines or standards, calculated to protect the interests of all the inhabitants. The result is unequal treatment under the law. Kasten at 717. The "consent" ordinance is also arbitrary and capricious, since the exercise of a negative vote by one resident could defeat the Shannons' petition. The arbitrariness of the ordinance is obvious when the Shannons' adjoining neighbors, who live in a mobile home, can withhold their consent and deny the Shannons the right to locate a mobile home on their property.

- 5 -

The "consent" ordinance also represents an unwarranted application of police power. This Court stated in Freeman v. Board of Adjustment (1934), 97 Mont. 342, 356, 34 P.2d 534, "In order for [an] ordinance to comply with the requirements essential to the exercise of police power . . ., it [is] essential that there should be an appellate body, such as the board of adjustment, with the power to consider exceptional cases." Here, although the zoning ordinance gives the City Council, acting as a board of adjustment, the power to refuse to grant the petition, the City Council does not have the same power to determine whether a variance should be granted unless a petition is submitted with the required consent signatures. Thus, the City Council is effectively precluded from hearing and determining the Shannons' petition.

We therefore find the "consent" ordinance in this case to be unconstitutional as an unlawful delegation of legislative authority and police power. The judgment of the District Court is reversed.

_____
                     Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
      Justices

- 6 -