1997 SD 18

**Jane CARY, Plaintiff and Appellant,**

v.

**CITY OF RAPID CITY, South Dakota, Defendant and Appellee.**

No. 19689.

Supreme Court of South Dakota.

Considered on Briefs Jan. 16, 1997.

Decided Feb. 26, 1997.

James S. Nelson and Mark J. Connot of Gunderson, Palmer, Goodsell & Nelson, and Melvin D. Wedmore, Rapid City, for Plaintiff and Appellant.

Tamara M. Pier, Assistant City Attorney, Rapid City, for Defendant and Appellee.

MILLER, Chief Justice.

[¶ 1] Jane Cary petitioned the city of Rapid City, South Dakota, seeking to rezone certain property from a general agricultural classification to a medium density residential classification. The City approved an ordinance granting Cary's request. Prior to the effective date of the ordinance, certain neighboring property owners filed a written protest of the rezoning pursuant to SDCL 11–4–5. Based on the protest, the ordinance rezoning Cary's property was blocked.

[¶ 2] Cary brought an action seeking a declaratory judgment and a writ of mandamus declaring the rezoning ordinance to be effective. In addition, she requested that the trial court declare SDCL 11–4–5 inapplicable to her property and unconstitutional. The trial court declared SDCL 11–4–5 constitutional and applicable to Cary's property. Cary appeals. We reverse.

## FACTS

[¶ 3] This matter was presented to the trial court by stipulation of facts. The trial court entered findings of fact (even though findings are superfluous in a stipulated case, *Muhlenkort v. Union Cty. Land Trust*, 530 N.W.2d 658, 660 (S.D.1995)) and conclusions of law based on the stipulation.

[¶ 4] Cary's property, which is located in southwestern Rapid City, was annexed into the City on September 8, 1992. At the time of annexation, it was classified as "no use" property pursuant to Rapid City Municipal Code 17.26.010. Following annexation, City placed a street assessment of approximately $90,000 on the western portion of the property. Additionally, the property's real estate taxes were increased from $122.36 in 1990 to $3,678.48 in 1995. The property, however, continued to be used as a horse pasture and generated rental income of $150 per year.

[¶ 5] On December 6, 1993, City adopted an ordinance rezoning Cary's property as "general agriculture" property. The City Planning Department described this rezoning as follows:

The property was zoned General Agriculture following annexation into the City limits.

\* \* \* \* \* \*

The purpose of the General Agriculture zoning of this property was to allow it to be used for agricultural purposes until development was proposed.

[¶ 6] As a result of the street assessment and increased property taxes, Cary decided to sell the property. In 1995, she received an offer to purchase which was contingent on the property being rezoned as "medium density residential" to allow construction of apartment buildings. According to the buyers, a medium density residential designation was the lowest zoning classification which would be cost effective and economically viable for the property.

[¶ 7] In an attempt to comply with the buyers' condition, Cary filed a petition with City seeking to rezone the property. She complied with all requirements for rezoning. The Rapid City Fire Department, Engineering Department, Building Inspector and City Planning Department recommended approval of the petition. On September 5, 1995, City approved Ordinance 3224 rezoning Cary's property as medium density residential property. In accordance with the law, the ordinance was published on September 11, 1995, and scheduled to take effect October 1, 1995. On September 21, 1995, more than forty percent of the neighboring property owners filed a written protest pursuant to SDCL 11–4–5. The protesters owned less than eighteen percent of the property neighboring Cary's property. Based on the protest, City took the appropriate legal position that the ordinance could not be effectuated because of the provisions of SDCL 11–4–5.

[¶ 8] Cary then brought an action in circuit court seeking a declaratory judgment and a writ of mandamus. She asked the trial

court to declare Ordinance 3224 effective and require City to rezone the property in compliance with her petition. Additionally, she requested that SDCL 11–4–5 be declared inapplicable to the property or, in the alternative, be declared unconstitutional. The trial court denied her requests. Cary appeals, raising two issues: (1) Whether SDCL 11–4–5 applies to the property; and (2) whether SDCL 11–4–5 is constitutional. Because we find SDCL 11–4–5 to be unconstitutional, we need not address the first issue.

## DECISION

### Whether SDCL 11–4–5 is Constitutional

[¶ 9] SDCL 11–4–5 provides:

If such [a proposed zoning] ordinance be adopted, the same shall be published and take effect as other ordinances unless the referendum be invoked, or unless a written protest be filed with the auditor or clerk, signed by at least forty percent of the owners of equity in the lots included in any proposed district and the lands within one hundred fifty feet from any part of such proposed district measured by excluding streets and alleys. A corporation shall be construed to be a sole owner, and when parcels of land are in the name of more than one person, ownership representation shall be in proportion to the number of signers who join in the petition in relation to the number of owners. In the event such a protest be filed, the ordinance shall not become effective as to the proposed district against which the protest has been filed. Such written protest shall not be allowed as to any ordinance regulating or establishing flood plain areas.

■ [¶ 10] Challenges to the constitutionality of a statute must overcome formidable requirements.

There is a strong presumption that the laws enacted by the legislature are constitutional and that presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.

*Sedlacek v. South Dakota Teener Baseball Program*, 437 N.W.2d 866, 868 (S.D.1989) (citations omitted). *See also State v. Hauge*, 1996 SD 48, ¶ 4, 547 N.W.2d 173, 175; *Kyllo v. Panzer*, 535 N.W.2d 896, 898 (S.D.1995); *Specht v. City of Sioux Falls*, 526 N.W.2d 727, 729 (S.D.1995); *In re Certification of a Question of Law (Elbe)*, 372 N.W.2d 113, 116 (SD 1985). If a statute can be construed so as not to violate the constitution, that construction must be adopted. *Simpson v. Tobin*, 367 N.W.2d 757, 766 (S.D.1985).

[¶ 11] Relying on our prior holding in *State Theatre Co. v. Smith*, 276 N.W.2d 259, 264 (S.D.1979), the trial court determined SDCL 11–4–5 to be constitutional. On appeal, Cary argues the protest provision of the statute is unconstitutional [1] because it does not provide standards and guidelines for the delegation of legislative authority, nor does it contain a legislative bypass provision to remove the ultimate legislative authority and lawmaking power from the protesters. She claims the absence of such provisions is an unlawful delegation of legislative power that results in a small number of property owners being able to prevent a landowner's use of property. Cary also contends the holding in *State Theatre* was in error and is not controlling in the instant case.

[¶ 12] SDCL 11–4–5 has been the subject of previous constitutional review. In *State Theatre*, SDCL 11–4–5 was determined to be a consent statute and held constitutional. 276 N.W.2d at 263–64. In determining SDCL 11–4–5 to be constitutional, the *State Theatre* court stated:

SDCL 11–4–5 is not a typical "protest" statute. Normally enabling acts provide

---

1. "Ordinarily, we will not rule on the constitutionality of a statute unless the Attorney General has been notified because when an adjudication of unconstitutionality may seriously affect the general public, it is proper for the Attorney General to appear on behalf of the Legislature and the people." *West Two Rivers Ranch v. Pennington Cty.*, 1996 SD 70, ¶ 15, 549 N.W.2d 683, 687 (citing *Sioux Falls Argus Leader v. Young*, 455 N.W.2d 864, 870 (S.D.1990); *Sharp v. Sharp*, 422 N.W.2d 443, 446 (S.D. 1988)).

The attorney general was provided proper notice of Cary's challenge to the constitutionality of SDCL 11–4–5.

for the filing of protest petitions by a specified number of property owners within in a prescribed distance of the land affected by the amendment under consideration. If sufficient protests are filed, a larger affirmative vote of the municipal legislative body than normally needed to enact an ordinance is required to adopt the protested amendment and render the protest ineffective. R. Anderson, American Law of Zoning § 4.33 (2d Ed.1966). These provisions have been held constitutional when challenged as an unlawful delegation of legislative power. *Garrity v. District of Columbia*, 66 U.S.App. D.C. 256, 86 F.2d 207 (1936); *Northwood Properties Co. v. Perkins*, 325 Mich. 419, 39 N.W.2d 25 (1949).

SDCL 11–4–5 does allow protest by neighboring property owners but does not include a provision for subsequent municipal legislative action. The statute is, therefore, analogous to what are referred to as "consent" statutes. These statutes require that the consent of a certain number of affected neighbors be obtained before a zoning ordinance is amended. The legislative body has no power to overrule; the neighbors are given the ultimate power to block the amendment. R. Anderson, American Law of Zoning § 4.36.

The validity of consents has long been debated; the absence of standards relating to the giving of consents has been a major ground for the invalidity of consent statutes. There appear to be two categories of consent statutes: those requiring consent to establish a restriction and those requiring consent to waive a restriction. The former are invalid and the latter valid. 276 N.W.2d at 263. ·

[¶ 13] The *State Theatre* court concluded the result of the protest by other property owners was analogous to requiring the consent of a number of affected property owners. Unlike traditional consent statutes, the consent under SDCL 11–4–5 was required after the adoption of the ordinance instead of before the adoption. *Id.* The court also determined the absence of a statutory provision to provide for a review of the protests by a larger vote of the municipality was indicative of a consent statute rather than a

protest statute. *Id.* Therefore, the *State Theatre* court concluded SDCL 11–4–5 to be a consent statute. *Id.* at 264.

[¶ 14] For the reasons set forth below, we expressly overrule the holding in *State Theatre* and conclude SDCL 11–4–5 is unconstitutional.

[¶ 15] Initially, we must determine whether SDCL 11–4–5 is a consent statute or a protest statute. When analyzing a statute to determine legislative intent, we must assume the legislature had in mind all provisions relating to the same subject. *In re Estate of Smith*, 401 N.W.2d 736, 740 (S.D. 1987). In SDCL ch 11–4, only SDCL 11–4–9 may require the consent of neighboring landowners as a prerequisite to effectuating a zoning ordinance. Under SDCL 11–4–9, consent of any property owners having a right to protest an ordinance under SDCL 11–4–5 may be required in certain circumstances in the discretion of the governing body. SDCL 11–4–9 provides:

> The governing body may by ordinance require as a condition precedent to the introduction of any ordinance proposing changes in the zoning ordinance that there be first filed with the city auditor or clerk the written consent of the owners not exceeding sixty percent of the aggregate area having the right of protest against such proposed ordinance if adopted, determined as provided by § 11–4–5.

[¶ 16] SDCL 11–4–5, however, makes no mention of consent as a prerequisite to effectuating a zoning ordinance but, rather, provides that forty percent of neighboring property owners may file a written *protest* following the adoption of a zoning ordinance. In the event of such a properly filed written *protest*, the adopted ordinance "shall not become effective." SDCL 11–4–5.

[¶ 17] The express language of SDCL 11–4–9 indicates the legislature's inclusion of a consent prerequisite in certain situations. SDCL 11–4–5 does not use language requiring consent prior to the adoption of zoning ordinances. Instead, SDCL 11–4–5 specifically uses language allowing written protests to be filed after the adoption of zoning ordinances. SDCL 11–4–9 is a proactive statute which, if exercised by the appropriate governing body, requires consent to rezoning

ordinances be secured prior to the adoption of the ordinance. SDCL 11–4–5, on the other hand, is a reactive statute which allows a written protest to block an ordinance following its adoption. The distinction between the language of SDCL 11–4–9 and SDCL 11–4–5 indicates the legislature's intent to provide two different and distinct methods by which zoning ordinances may be limited. We now conclude, based on the plain language of SDCL 11–4–5, the legislature's specific inclusion of a consent provision in SDCL 11–4–9 and the intent of the legislature as expressed through all provisions of SDCL ch 11–4, that SDCL 11–4–5 is a protest statute.

[¶ 18] Having determined SDCL 11–4–5 to be a protest statute, we now turn to the constitutionality of the statute.

[¶ 19] Legislative power is vested in the legislature and this essential power may not be abdicated or delegated. SD Const Art III, § 1; *Ind. Community Bankers Ass'n v. State*, 346 N.W.2d 737, 743 (S.D. 1984); *Schryver v. Schirmer*, 84 S.D. 352, 171 N.W.2d 634, 635 (1969). When a legislative body retains a police power, articulated standards and guidelines to limit the exercise of the police power are unnecessary. *Bashant v. Walter*, 78 Misc.2d 64, 355 N.Y.S.2d 39, 44 (N.Y.Sup.Ct.1974). Police powers which are delegated, however, must include minimum standards and guidelines for their application. *Id.* 355 N.Y.S.2d at 45. The failure to provide standards and guidelines for the application of the police power constitutes a delegation of legislative power repugnant to the due process clause of the Fourteenth Amendment. *Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 122, 49 S.Ct. 50, 52, 73 L.Ed. 210, 213 (1928); *Bashant*, 355 N.Y.S.2d at 45.

[¶ 20] Zoning ordinances find their justification in the legislative police power exerted for the interest and convenience of the public. *Eubank v. Richmond*, 226 U.S. 137, 142, 33 S.Ct. 76, 77, 57 L.Ed. 156, 159 (1912). A delegation of this legislative power requires appropriate standards and guidelines. *Id. See also Drovers Trust & Savings Bank v. City of Chicago*, 18 Ill.2d 476, 165 N.E.2d 314, 315 (1960); *Shannon v. City of*

*Forsyth*, 205 Mont. 111, 666 P.2d 750, 752 (1983). Additionally, " '[i]n order for an ordinance to comply with the requirements essential to the exercise of police power ..., it is essential that there should be an appellate body, such as the [City], with the power to review exceptional cases.' " *Shannon*, 666 P.2d at 752 (quoting *Freeman v. Board of Adjustment*, 97 Mont. 342, 356, 34 P.2d 534, 539 (1934)).

[¶ 21] In the instant case, SDCL 11–4–5 does not provide guidelines or standards for protesting an adopted ordinance. So long as a certain number of neighboring property owners file a written petition, those property owners may impose or create restrictions on neighboring property without reason or justification.

[¶ 22] A person's right to use his or her land for any legitimate purpose is constitutionally protected. *Seattle Trust*, 278 U.S. at 121, 49 S.Ct. at 52, 73 L.Ed. at 213. SDCL 11–4–5, however, allows the use of a person's property to be held hostage by the will and whims of neighboring landowners without adherence or application of any standards or guidelines. Under SDCL 11–4–5, "the property holders who desire to have the authority to establish [a restriction] may do so solely for their own interests or even capriciously. Taste (for even so arbitrary a thing as taste may control) or judgment may vary[.]" *Eubank*, 226 U.S. at 144, 33 S.Ct. at 77, 57 L.Ed. at 159. Such a standardless protest statute allows for unequal treatment under the law and is in clear contradiction of the protections of the due process clause of the Fourteenth Amendment. *See Id.*

[¶ 23] Furthermore, SDCL 11–4–5 provides no legislative bypass to allow for review of a protest. The filing of a written protest requires that the adopted ordinance "shall not become effective." SDCL 11–4–5. By allowing forty percent of the neighboring property owners to block the effectuation of an adopted ordinance approved by City, as being consistent with the best interests of the public, SDCL 11–4–5 allows a potentially small number of neighboring property owners to make the ultimate determination of the public's best interest.[2] The absence of a review provision or some method by which a

---

2. As presently written, SDCL 11–4–5 would allow the owner of one small parcel of land within

protest is reviewed by a legislative body makes the protest filed under SDCL 11–4–5 determinative and final. *See Garrity v. District of Columbia,* 66 U.S.App. D.C. 256, 86 F.2d 207 (1936); *Northwood Properties v. Perkins,* 325 Mich. 419, 39 N.W.2d 25 (1949). The ultimate determination of the public's best interest is for the legislative body, not a minority of neighboring property owners. *See Eubank,* 226 U.S. at 143, 33 S.Ct. at 77, 57 L.Ed. at 159. Delegations of legislative authority which allow this ultimate decision to be made by a minority of property owners without an opportunity for review are unlawful. *Id.*

[¶ 24] The protest provision of SDCL 11–4–5 is unconstitutional. We therefore expressly overrule the previous holding of *State Theatre* to the extent that it conflicts with this ruling.

[¶ 25] Reversed.

[¶ 26] SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

---

one hundred fifty feet of a large parcel of land to effectively block any proposed use of the large parcel of land so long as the small parcel owner constituted forty percent of neighboring property owners and a written protest was filed.