JUSTICE McKINNON,
dissenting.
¶85 In my opinion, the Court today fails to distinguish between a zoning regulation and a statute that enables zoning to take place in the first instance. The latter does not implicate considerations of an unconstitutional delegation of legislative authority, while the former may. In failing to make a distinction between enabling provisions of the zoning statute and its substantive provisions, the Court has declared unconstitutional a condition precedent to zoning which the Legislature, as representatives of its citizens, determined was proper to have. We tell the Legislature and Montana citizens today that you must have zoning in your counties even though 50 percent of agricultural landowners do not want to be zoned. We tell the Legislature and Montana citizens today that we find offensive a statute which prioritizes land ownership, perhaps at the expense of a large number of county residents.
¶86 The Court’s decision today allows county commissioners in rural counties to implement zoning measures impacting farm and agricultural land based upon a resolution of county commissioners-normally three individuals in our rural counties. We make these declarations in spite of the Legislature’s finding and *384 purpose ‘to protect agricultural activities from governmental zoning and nuisance ordinances,” §76-2-901(2), MCA, and the Legislature’s recognition that agricultural lands in Montana are a basis of Montana’s growth and development, § 76-2-901(1), MCA. While recognizing Montana’s unique heritage as a basis for upholding statutes in other contexts, we strike down today one of Montana’s “unique” statutes designed to protect agricultural lands from governmental zoning. We are obliged as jurists, as compared to legislators, to recognize these distinctions in the law, and to not allow our preference for zoning, in particular circumstances, to confuse our analysis.
¶87 Landowners own the majority of the property subject to the proposed regulations. They own agricultural and forest land and are taxed accordingly. One of the Landowners, Liberty Cove, wanted to build a lake on their property and entered into a purchase agreement with a contractor for the gravel mining operations. On March 8,2006, Missoula County granted a zoning compliance permit, noting that the site location was not zoned. County commissioners received complaints from Lolo residents requesting the county enact interim zoning to address environmental and traffic concerns at the site. The Court today notes that Landowners are attempting to “transform their agricultural and forest land into a large industrial gravel pit” and that Landowners were not “utilizing the protest provision to preserve their ability to ‘produce a safe, abundant, and secure food and fiber supply’ or protect their ‘right to stay in farming.’ ” Opinion, ¶ 55. I do not believe it is for this Court to decide which uses of property have merit and which do not. It seems to me such an analysis is akin to the notion of choosing what speech someone may or may not hear. I, for one, am uncomfortable with the notion that my rights depend on the value another individual gives to the particular use I make of my property, as long as it is lawful. Landowners pay taxes on their agricultural and farm land and their standing under §76-2-205(6), MCA, has not been challenged. We ought not qualify our analysis by questioning whether they are endeavored in “agricultural production and the traditional uses of forest and agricultural land.” Opinion, ¶ 55.
¶88 Zoning regulations are enacted pursuant to the police power of the state. Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S. Ct. 114 (1926).
The power to zone is exercised primarily by local units of the government. However, local governments have no inherent police powers of their own and therefore no inherent power to zone. *385 Before a local government can legally exercise the zoning power, it must receive a delegation of that power from the sovereign entity inherently possessing it. Most typically, that entity is the state.
6 Patrick J. Rohan, Zoning and Land Use Controls, §35.01 (Matthew Bender 2013). There is thus no inherent power to zone except as has been delegated to local government by its enabling statutes or constitution. Transamerica Title Ins. Co. v. Tucson, 757 P.2d 1055 (Ariz. 1988); Riggs v. City of Oxnard, 154 Cal. App. 3d 526, 201 Cal.Rptr 291 (1984); Nopro Co. v. Cherry Hills Village, 504 P.2d 344 (Colo. 1972); Stucki v. Plavin, 291 A.2d 508 (Me. 1972); Sun Oil Co. v. New Hope, 220 N.W.2d 256 (Minn. 1974); State ex rel Ellis v. Liddle, 520 S.W.2d 644 (Mo. Ct. App. 1975); Nemeroff Realty Corp. v. Kerr, 38 A.D.2d 437, 330 N.Y.S.2d 632 (N.Y. App. Div. 1972), aff'd 299 N.E.2d 897 (1973). The action taken by the local government must not exceed that provided for in its delegation and must be consistent with the enabling legislation. Smith v. Zoning Bd. Of Appeals of Greenwich, 629 A.2d 1089 (Conn. 1993); Board of Township Trustees v. Funtime, Inc., 563 N.E.2d 717 (Ohio 1990); Riggs v. Long Beach, 538 A.2d 808 (N.J. 1988); Ramsey v. Portland, 836 P.2d 772 (Or. 1992); Jachimek v. Superior Ct., 819 P.2d 487 (Ariz. 1991); Ripso Realty & Dev. Co. v. Parma, 564 N.E.2d 425 (Ohio 1990). The Supreme Court of North Carolina has aptly described the nature of the delegation of authority to zone:
Thus, the power to zone is the power of the State and rests in the General Assembly originally. There, it is subject to the limitations imposed by the Constitution upon the legislative power forbidding arbitrary and unduly discriminatory interference with the rights of property owners.
A municipal corporation has no inherent power to zone its territory and restrict to specified purposes the use of private property in each such zone.... Obviously, the General Assembly cannot delegate to a municipal corporation more extensive power to regulate the use of private property than the General Assembly, itself, possesses. Consequently, the authority of a city or town to enact zoning ordinances is subject both to the above mentioned limitations imposed by the Constitution and to the limitations of the enabling statute.
Zopfi v. Wilmington, 160 S.E.2d 325 (N.C. 1968) (internal citations omitted).
*386 ¶89 Involvement by state legislatures in land-use regulation has been growing since the 1960s. Robert M. Anderson offers the following analysis for the growth of state legislatures’ involvement, by way of enabling legislation, into the land-use control field:
Land-use restriction was assumed to be a problem which could be solved more efficiently on the local level. The rationale of this policy was articulated as early as 1929 by Chief Judge Cardozo of the New York Court of Appeals: “A zoning resolution in many of its features is distinctively a city affair, a concern of the locality, affecting, as it does, the density of population, the growth of city life, and the course of city values.”
The growing state participation in land-use regulation has been generated by a combination of problems of a regional nature and local inability to provide solutions. The typical fragmentation of the zoning power, which created numerous zoning authorities in urban areas sharing a common regional problem, made orderly control of development improbable. Legislative bodies, amenable to electors from a small geographic district, predictably enacted zoning regulations which served the provincial interest of their district.
They disregarded the broad interests of the regional community, making solution of area-wide problems difficult, if not impossible. This invited state regulation by legislators who were answerable to a broader constituency. State legislators began to realize that ecological problems would be solved, if at all, only on a state wide basis. This encouraged the adoption of measures to control land use which threatened natural resources, including places of natural beauty or historic interest. In addition, state land use controls were inspired by such other factors as land shortages, fiscal crises, urban deterioration, and a wide variety of community ills which seemed unlikely to be cured by purely local regulation.
1 Robert M. Anderson, American Law of Zoning 3d, §2.03 (1986).
¶90 Pursuant to Montana’s Constitution, county commissioners have only that legislative authority specifically granted by the Legislature. Mont. Const, art. XI, §3(1). The Legislature conditioned their grant of legislative authority to zone by allowing 40% of real property owners or 50% of agricultural land owners to reject any proposed zoning. While popularly elected county commissioners can vote for or against *387 zoning proposals, they cannot enact zoning ordinances when they have not been granted the authority to do so. The Legislature specifically limited the authority of county commissioners to zone by allowing those most affected by the zoning-the property owners-to reject any proposed zoning. The 1995 protest provision was sponsored by Rep. Trexler who, in his opening statement on HB 358, explained the bill was ‘hot a zoning bill” and was not intended to address public health, safety and welfare because county governments already had in place mechanisms to protect public health and safety. The purpose of the bill was to address if “a group of people are imposing their wishes on their neighbors, they must sit down and talk with their neighbors to reach an agreement.” Owners of agricultural land “should be allowed to [manage their property] and not be zoned to [prevent] that.” Senate Committee Hearing on HB 358 (March 21, 1995). Then Attorney General Joe Mazurek opined in 1996 that
Where is no controlling decisional law in Montana pertaining to. the questions ... presented and the law of other jurisdictions has limited application given the unusual nature of the Montana statute. Opinions of other jurisdictions are premised on the recognition that the protest provisions of those jurisdictions pertain to the amendment of an existing zoning regulation. The courts recognize that those protest provisions are a form of protection afforded property owners in the stability and continuity of preexisting zoning regulations. Such reasoning is not applicable to the Montana statute, which operates as a form of extraordinary protection afforded property owners to prevent the legislative body from adopting zoning regulations in the first instance. As such, the statute operates more like a “consent provision” than a protest provision. Consistent with these observations, the statute’s “protest” rights discussed within this opinion are so identified only for purposes of consistency with the actual language of the statute.
46 Mont. Op. Att’y 22 (July 22, 1996) (emphasis added; footnotes omitted).
¶91 Initially, it is significant to point out that this Court has previously held valid, as against an attack that the statute was an unlawful delegation of legislative authority, the statutory forerunner to §76-2-205, MCA. In City of Missoula v. Missoula County, 139 Mont. 256, 362 P.2d 539 (1961), this Court found that zoning statutes which created a zoning commission and enabled the county commissioners to *388 enact zoning ordinances validly delegated administrative authority and provided sufficiently clear, definite and certain standards to enable the agency to know its rights and obligations. See Montana Wildlife Federation v. Sager, 190 Mont 247, 258, 620 P.2d 1189, 1196 (1980). We said in City of Missoula:
We shall not quote the entire act, but, with respect to the procedure, the law provides definite outlines and limitations. The zoning district may come into being only upon petition of sixty percent of the freeholders in the area. The adoption of the development district must be by a majority of the Commission, after definitely prescribed public notice and public hearing. The resolution must refer to maps, charts, and descriptive matters. In other words, quite adequate procedural matters are contained in the act itself.
City of Missoula, 139 Mont. at 260-61, 362 P.2d at 541. Although City of Missoula did not directly address the contention raised here, this Court recognized the validity of the statutory provision that prevented the creation of a zoning district until 60% of the freeholders petitioned for its establishment. Significantly, these prior enabling provisions, found to be valid by the Court, “denied the power to regulate the use of land for grazing, horticulture, agriculture, or the growing of timber.” City of Missoula, 139 Mont. at 258, 362 P.2d at 540 (emphasis added). The Legislature’s limitation of zoning authority to a county and its zoning commission has thus been part of our statutory scheme since 1953. Our current zoning statute, §76-2-205, MCA, actually provides less protection to owners of agricultural and farm lands by not prohibiting zoning outright of these lands, but instead conditioning it upon there being no objection from at least 51% of the landowners of agricultural and farm land.
¶92 I agree with Justice Rice in his Dissent when he states that “the Court has gotten it exactly backwards” in describing our analysis of cases construing protest provisions. Dissent, ¶ 73. While it is true that the Supreme Court in Eubank v. Richmond, 226 U.S. 137, 33 S. Ct. 76 (1912), found an unconstitutional delegation of legislative authority to particular landowners in determining the location of a building line, the authority to establish the building line was not challenged and had already been conferred. Thus the question was not whether the City of Richmond had authority to create the ordinance, but rather, once conferred, whether that authority was constitutionally exercised.
The action of the committee is determined by two-thirds of the *389 property owners. In other words, part of the property owners fronting on the block determine the extent of use that other owners shall make of their lots, and against the restriction they are impotent. This we emphasize. One set of owners determine not only the extent of use but the kind of use which another set of owners may make of their property. In what way is the public safety, convenience or welfare served by conferring such power? The statute and ordinance, while conferring the power on some property holders to virtually control and dispose of the proper rights of others, creates no standard by which the power thus given is to be exercised; in other words, the property holders who desire and have the authority to establish the line may do so solely for their own interest or even capriciously.
Eubank, 226 U.S. at 143-44, 33 S. Ct. at 77 (emphasis added). Five years later, the Supreme Court explained, in declaring constitutional an ordinance that required consent by a majority of the property holders before billboards could be erected in residential areas, that:
A sufficient distinction between the ordinance [in Eubanks] and the one at bar is plain. The former left the establishment of the building line untouched until the lot owners should act and then made the street committee the mere automatic register of that action and gave to it the effect of law. The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification. The one ordinance permits two-thirds of the lot owners to impose restrictions upon the other property in the block, while the other permits one-half of the lot owners to remove a restriction from the other property owners. This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances .
Thomas Cusack Co., v. Chicago, 242 U.S. 526, 531, 37 S. Ct. 190, 192 (1917) (emphasis added). See also Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 121-22, 49 S. Ct. 50, 52 (1928), where the Court held that Tt]he right of [a property owner] to devote [his] land to any legitimate use is properly within the protection of the Constitution” and thus the consent provision for issuance of a permit to accommodate a larger home for the elderly poor was an unconstitutional delegation of power and “repugnant to the due process clause of the Fourteenth Amendment.”
*390 ¶93 The Court’s reliance on Cary v. City of Rapid City, 559 N.W.2d 891 (S.D. 1997), and Shannon v. Forsyth, 205 Mont. 111, 666 P.2d 750 (1983), is also misplaced. In Cary, the issue was not the authority to zone, but rather whether the authority delegated was constitutionally exercised. Cary sought to have her property rezoned which, following protests from neighbors, was denied by the City. The Court determined that the absence of a legislative bypass and a standardless statute regarding her neighbors’ protests “allows for unequal treatment under the law.” Cary, 559 N.W.2d at 895. Similarly, in Shannon, several zoning districts had already been established. The issue was whether there were sufficient standards imposed upon adjoining landowners in denying a petition seeking a waiver to locate a mobile home within a ‘Residential A”zoning district. This Court determined that the consent ordinance was unconstitutional as an unlawful delegation of legislative authority and police power. Shannon, 205 Mont. at 115, 666 P.2d at 753.
¶94 Other jurisdictions have observed a distinction between consent and protest provisions which impermissibly delegate legislative authority and those that condition the exercise of legislative authority on particular conditions having been established. In O’Brien v. St. Paul, 173 N.W.2d 462 (Minn. 1969), the Court determined that a provision requiring an owner to obtain written consent of two-thirds of the adjoining property owners prior to rezoning was valid. Consent was determined to be not a delegation of power, but merely a condition precedent to an exercise of power by the city council. The Court referred to rules enunciated from other jurisdictions and adopted the following distinction:
If the action of the property owners has the effect of legislation-if it creates the restriction or prohibition, then it is deemed to fall within the forbidden “delegation of legislative power.”
On the other hand, if the consents are used for no greater purpose than to waive or modify a restriction which the legislative authority itself has lawfully created and in which creation it has made provisions for waiver or modification, then such consents are generally regarded as being within constitutional limitations.
O’Brien, 173 N.W.2d at 465-66 (citing 2 Metzenbaum, Law of Zoning, c. X-b-1, p. 1067 (2d ed.). See also 1 Yokley, Zoning Law and Practice § 7-13, p. 358 (3d ed.). The Washington Supreme Court upheld a similar consent statute and explained:
*391 In this case it may readily be seen that the council, recognizing the rights of the residents of the city to be consulted in matters purely local, matters affecting the comfort and even the health of the residents, and the right to have their will reflected in the enactments of their representatives, provided the ordinance for the purpose of meeting the desires of the residents in that regard. The ordinance is prohibitive, but leaves the right to the citizen to waive the prohibition if he chooses. Statutes of this character are common, and while it is generally conceded that the legislature cannot delegate its legislative function, it is well established that it may provide for the operation of a law which it enacts upon the happening of some future act or contingency. The local option laws in their various phases are common instances. While these laws were violently assailed, and in some instances received judicial condemnation, they are now almost universally sustained.
Spokane v. Camp, 97 P. 770, 771 (Wash. 1908) (emphasis added.). The Illinois Supreme Court explained in 1896 that Ti]t is competent for the legislature to pass a law, the ultimate operation of which may, by its own terms, be made to depend upon a contingency .... The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.” Chicago v. Stratton, 44 N.E. 853, 855 (Ill. 1896). The distinction drawn was this:
In the case at bar, the ordinance provides for a contingency, to-wit: the consent of a majority of the lot owners in the block, upon the happening of which the ordinance will be inoperative in certain localities. The operation of the ordinance is made to depend upon the fact of the consent of a majority of the lot owners, but the ordinance is complete in itself as passed. What are known as local option laws depend for their adoption or enforcement upon the votes of some portion of the people, and yet are not regarded as delegations of legislative power. Delegation of power to make the law is forbidden, as necessarily involving a discretion as to what the law shall be; but there can be no valid objection to a law, which confers an authority or discretion as to its execution, to be exercised under and in pursuance of the law itself.
Chicago, 44 N.E. at 855 (internal citations omitted).
¶95 A careful and close reading of these cases demonstrates that there exists a clear distinction between those protest and consent provisions *392 that impermissibly delegate legislative authority and those that require a condition precedent to the exercise of legislative authority in the first instance. In my opinion, we have failed to recognize this distinction. I believe it is the role of the Legislature to chart the course of this State in land development and growth. Ultimately, it is up to the citizens to craft their own destiny, but they must do so in the Legislature and not the courts. If they are displeased with zoning provisions in our statutes, then their remedy is to petition their representatives for a change in the law. While I would have no problem scrutinizing a statute for an unconstitutional delegation of authority, that analysis is not called for here. The statute merely imposes a condition precedent to the grant of legislative authority to the counties to zone. I believe courts “should be wary of substituting their economic and business judgment for that of legislative bodies, and should avoid the temptation, however attractive, to sit as a ‘super-legislature to weigh the wisdom of legislation.’ ’’ McCallin v. Walsh, 64 A.D.2d 46, 59, 407 N.Y.S.2d 852, 859 (N.Y. App. Div. 1st Dept. 1978) (quoting Day-Brite Lighting v. Missouri, 342 U.S. 421, 423, 72 S. Ct. 405, 407 (1952)).
¶96 I respectfully dissent.