**CONGREGATION KOL AMI and Rabbi Elliot Holin, Plaintiffs,**

v.

**ABINGTON TOWNSHIP; Board of Commissioners of Abington Township; The Zoning Hearing Board of Abington Township and Lawrence T. Matteo, Jr., Defendants.**

**No. CIV. A. 01–1919.**

United States District Court, E.D. Pennsylvania.

July 11, 2001.

Jonathan Auerbach, Berger & Montague, P.C., Philadelphia, PA, Anthony R. Picarello, Jr., Roman P. Storzer, Washington, DC, for Plaintiffs.

Harry G. Mahoney, Michael L. Barbiero, Carla P. Maresca, Deasy Mahoney & Bender, Ltd., Philadelphia, PA, Marci A. Hamilton, Yardley, PA, R. Rex Herder, Jr., Acton, Herder & Bresnan, Ambler, PA, for Defendants.

Linda L. Bocchino, Asst. U.S. Atty., Philadelphia, PA, Adam Szubin, U.S. Dept. of Justice Civil Division, Washington, DC, for Movants.

*MEMORANDUM*

NEWCOMER, Senior District Judge.

Currently before the Court is plaintiff's Motion for Partial Summary Judgment, and defendants' response thereto.

## I. INTRODUCTION

Plaintiffs, Congregation Kol Ami and Rabbi Elliot Holin allege that the zoning laws of Abington Township, Pennsylvania violate the United States and Pennsylvania Constitutions because they prohibit houses of worship from locating in residential districts, yet allow other institutions to settle in those districts.[1]

## II. BACKGROUND

Plaintiff Congregation Kol Ami ("Kol Ami") is a Pennsylvania non-profit corporation which has operated as a religious institution in the Philadelphia area since 1994. A Reform Jewish Congregation, it has about 200 member-families, and its purpose is to conduct religious exercises and operate a Hebrew School two days per week. Plaintiff Elliot Holin is the Rabbi of Congregation Kol Ami.

Defendant Abington Township (the "Township") is a First Class township[2] in Pennsylvania, and is empowered to act through its governing body, officials, employees and official bodies, and has the

---

1. Plaintiffs seek partial summary judgment on the following counts in their Complaint: 1) count I, violation of the free exercise of religion pursuant to the First and Fourteenth Amendments of the United States Constitution; 2) count II, violation of freedom of conscience pursuant to Article I, Section 3 of the Pennsylvania Constitution; 3)count III, violation of freedom of speech pursuant to the First and Fourteenth Amendment of the United States Constitution; 4) count IV, violation of freedom of speech pursuant to Article I, Section 7 of the Pennsylvania Constitution; 5) count VII, violation of equal protection pursuant to the Fourteenth Amendment of the Unit- ed States Constitution; 6) count VIII, violation of equal protection pursuant to Article I, Section 26 of the Pennsylvania Constitution; 7) count IX, violation of due process pursuant to the Fourteenth Amendment of the United States Constitution. Plaintiffs claims for federal constitutional violations have been raised pursuant to 42 U.S.C. § 1983.

2. Abington Township operates as a First Class Township pursuant to the First Class Township Code of Pennsylvania, 53 PA CONS.STAT. § 55101.

power to regulate and restrict the use of land and structures within its borders. Defendant Board of Commissioners (the "Board") is the duly elected executive body of the Township. Its members select the members of defendant the Zoning Hearing Board of Abington Township ("ZHB").

The ZHB is the body that hears and decides: 1) appeals concerning the zoning ordinance at issue today, the May 9, 1996 Revised Abington Township Zoning Ordinance (the "1996 Ordinance"); 2) special exceptions to the 1996 Ordinance; and 3) variances from the terms of the 1996 Ordinance.

Defendant Lawrence T. Matteo, Jr. is the Director of Code Enforcement for the Township.

In 1978, the Township enacted Ordinance No. 1469 (the "1978 Ordinance") which created a V–Residence Zoning District. The V–Residence district permitted the following uses by right: single family detached dwellings, tilling of soil, township administrative buildings, public libraries, parks, and play or recreational areas. Religious institutions were permitted by special exception of the ZHB.

Then, in 1990, the Township amended the 1978 Ordinance with Ordinance No. 1676 (the "1990 Ordinance"). The 1990 Ordinance eliminated all uses by right in a V–Residence district, except for single family detached dwellings and accessories for those dwellings. It further eliminated all uses previously allowable by special exception including religious ones.

The May 9, 1996 Ordinance changed the designation of the Township's low density residential district from V–Residence to R–1 Residential. The 1996 Ordinance does not specifically allow religious institutions from locating in any of its four residential districts, R–1, R–2, R–3 and R–4. The R–1 district permits the following uses

by right: agriculture, livestock, single family detached dwelling, and conservation and recreation preserve. It also permits the following uses by special exception: kennel, riding academy, municipal complex, outdoor recreation, emergency services and utility facility.

Article IV of the 1996 Ordinance further defines the uses permitted by special exception in an R–1 district. For example, section 706(E)(8) states that a municipal complex includes such uses as a municipal administration building, police barracks, library, or road maintenance facility. Additionally, section 706(G)(6) defines outdoor recreation as "[p]ublic or private miniature golf courses, swimming pools, ball courts, tennis courts, ball fields, trails, and similar uses ... [o]utdoor recreation shall [also] include any accessory use, such as snack bars, pro shops, club houses, county clubs" or other similar uses. Further, section 706(J)(3) states that term "utility facility" includes public transportation structures such as train stations and bus shelters.

The 1996 Ordinance was enacted to further the goals of the Township's Comprehensive Plan, first enacted in 1977. The purpose of the Comprehensive Plan is to serve as a "guide to orderly Township development in promoting health, safety, welfare and convenience of the people within it. It organizes and coordinates the relationships between land use patterns. It charts a course for growth and change." Comprehensive Plan for Abington Township, § I.A (1977).

In August 1999, plaintiffs entered into an agreement with the Sisters of the Holy Family of Nazareth ("the Sisters") to purchase property located at 1908 Robert Road, Abington Township, Pennsylvania (the "Property") for use as a place of worship. The Property, located in an R–1 district, is a 10.9 acre parcel of land on a 30 foot wide cul-de-sac road. It contains

several buildings including a 250 seat chapel, and the Sisters used the Property as a convent and as a place of worship from 1957 to 1995. Then in 1995, the Sisters leased the Property to the Greek Orthodox Monastery of the Preservation of Our Lord for similar uses.

In January 2000, plaintiffs initiated proceedings before the ZHB requesting the ZHB's approval to continue the Sisters' use of the property, the ZHB's approval of a special exception, or a variance to use the property as a place of worship. During those proceedings, Kol Ami representatives testified that its Congregation may grow from 201 households to 350 households in five years. Further, Kol Ami intends to conduct Sabbath services on Friday and Saturday, Bar Mitzvahs, Bat Mitzvahs, High Holiday Services, and outdoor wedding ceremonies. Kol Ami also plans to expand the existing parking from 20 spaces to at least 137 spaces. The ZHB heard evidence that plaintiffs' proposed use would increase the traffic in the neighborhood from 8 to 121 vehicles during peak afternoon hours, and from 4 to 109 vehicles on Saturday.

On March 20, 2001, the ZHB issued an Opinion and Order denying plaintiffs' requests. With respect to plaintiffs' request to continue the Sisters' use of the property, the ZHB denied that request finding that the plaintiffs' proposed use of the property differed from the Sisters' use. Accordingly, it found that the plaintiffs' use of the Property would cause more traffic, noise and other neighborhood disruptions than the Sisters' use. The ZHB's Opinion does not specifically address plaintiffs' request for a special exception, but the opinion concludes that the 1996 Ordinance does not permit places of worship to locate in an R–1 district, and recognizes that the 1996 Ordinance does not specifically allow a special exception for places of worship.[3] Finally, the ZHB's decision to deny plaintiffs request for a variance was based upon its conclusion that "there is no legal justification for the Applicant to obtain a variance."[4] In light of these facts, the Court now turns to the plaintiffs' Motion.

## III. DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c) (1994). The party moving for summary judgment has the initial burden of showing the basis for its motion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *See id.* at 324, 106 S.Ct. 2548.

In their Motion for Partial Summary Judgment, plaintiffs only argue that the 1996 Ordinance fails rational review under the Equal Protection Clause, the Due Process Clause, and the First Amendment.[5]

---

3. *See ZHB Op.,* at 20.

4. *ZHB Op.,* at 22.

5. Although plaintiffs contend that the Ordinance also violates the Pennsylvania Constitution, plaintiffs do not develop this argument.

Instead, in a footnote, they contend that the Pennsylvania Constitution at least applies the same standard of review as the United States Constitution. Thus, because plaintiffs Motion and supporting brief is directed only at whether or not the Ordinance can survive

Although plaintiffs argue that the 1996 Ordinance is facially unconstitutional, the Court will first examine whether prohibiting Kol Ami from locating on the Property by special exception in the circumstances here deprives plaintiffs of rights secured by the Constitution. This course of action will enable the Court to avoid making an unnecessarily broad constitutional judgment. *See Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 501–502, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985); *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983).

■ It has long been the law that zoning regulations must bear a substantial relation to the public health, safety, morals or general welfare, and that legislators may not impose restrictions that unnecessarily and unreasonably interfere upon the use of private property or the pursuit of useful activities. *See Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 121, 49 S.Ct. 50, 73 L.Ed. 210 (1928). This general principal has been enforced through the Equal Protection Clause of the Fourteenth Amendment which commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)).

■ When analyzing legislation under the Equal Protection Clause, courts generally apply a rational review test; that is they will generally sustain legislation un-

less it is not rationally related to a legitimate state interest.[6] *See City of Cleburne,* 473 U.S. at 440, 105 S.Ct. 3249; *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174–175, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980).

The Supreme Court's decision in *City of Cleburne* provides substantial guidance for the Court's opinion today. There, the Supreme Court confronted a zoning ordinance that required special use permits to operate a group home for the mentally retarded in a residential district, yet did not require such permits for apartment houses, boarding and lodging houses, dormitories, hospitals, nursing homes and other similar places. *See City of Cleburne,* 473 U.S. at 447, 105 S.Ct. 3249. Upon consideration of the ordinance, the Court decided that there was no rational reason to impose a permit requirement on a home for the mentally retarded, but not the other places listed in the ordinance. *See id.,* at 450, 105 S.Ct. 3249. In that case, just as in the instant case, the defendant city argued that the ordinance was aimed at avoiding concentration of population and at lessening congestion of the streets. *See id.* However, the Court concluded that "these concerns obviously fail to explain why apartment houses, fraternity and sorority houses, hospitals and the like, may freely locate in the area without a permit." *Id.*

■ Here, defendants argue that the 1996 Ordinance properly precludes Kol Ami from requesting a special exception

---

rational review, the Court only decides that issue today.

**6.** When a statute classifies by race, alienage, national origin or gender, or impedes upon a fundamental right, courts will apply heightened standards of review. *See City of Cle-*

*burne v. Cleburne Living Center,* 473 U.S. 432, 440–41, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). However, as explained, plaintiffs' only argue now that the Ordinance cannot withstand rational review.

because Kol Ami's presence on the Property would cause traffic, light pollution, and noise to increase. However, the ZHB failed to consider whether any of these disruptions warrant the denial of a special exception.[7] In fact, the ZHB failed to specifically address plaintiffs' request for a special exception, but instead concluded that the 1996 Ordinance does not permit places of worship to locate in an R–1 district, and recognized that the 1996 Ordinance does not specifically allow a special exception for places of worship.

Not only does a house of worship inherently further the public welfare, but defendants' traffic, noise and light concerns also exist for the uses currently allowed to request a special exception. Indeed, there can be no rational reason to allow a train station, bus shelter, municipal administration building, police barrack, library, snack bar, pro shop, club house, county club or other similar use to request a special exception under the 1996 Ordinance, but not Kol Ami. Because the ZHB failed to consider whether traffic, noise, light or other disruptions warrant the denial of a special exception, and failed to apply the 1996 Ordinance in a way that accounts for that Ordinance's differing treatment of Kol Ami from the other permitted uses by special exception, the Court finds that defendants denied plaintiffs rights secured by the Constitution.

Accordingly, the Court will grant plaintiffs' Motion for Partial Summary Judgment, and enter judgment in their favor.

An appropriate Order will follow.

### ORDER

AND NOW, this day of July, 2001, the Court hereby ORDERS as follows:

1) Upon consideration of plaintiffs' Motion for Partial Summary Judgment and defendants' response thereto, said Motion is GRANTED, the Court finding the 1996 Ordinance as defined in the accompanying memorandum, is unconstitutional as applied to plaintiffs by the Zoning Hearing Board of Abington Township.

2) Defendants' Motion to DISMISS is DENIED as moot.

3) The parties' pre trial memoranda shall raise and address any issues remaining for trial.

AND IT IS SO ORDERED

---

7. Upon a review of the ZHB's March 20, 2001 Opinion and Order denying plaintiffs' request, it is clear that the ZHB only considered these disruptions when addressing whether Kol Ami's use of the property was a permissible continuation of a nonconforming use.